[No. 16081. *En Banc.* February 15, 1921.]

FRED KLIPPERT, *Respondent*, v. INDUSTRIAL INSURANCE DEPARTMENT *et al., Appellants.*[1]

MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION ACT—PERMANENT PARTIAL DISABILITY—AWARD—LIMIT—STATUTES—CONSTRUCTION. Under Laws 1919, p. 355, § 4, which provides a specific schedule of awards to workmen in extra hazardous employments for certain permanent partial disabilities, followed by a general provision for compensation for any other permanent partial disability in the proportion that the same bears to the scheduled disability which it most closely resembles, "but not in any case to exceed $2,000," the $2,000 limitation does not apply to the scheduled disabilities but only to the "other" unscheduled disabilities provided for in that paragraph.

SAME (20-1)—PERMANENT PARTIAL DISABILITIES—AWARD FOR FURTHER ACCIDENT — STATUTES — CONSTRUCTION. To the extent of the scheduled awards to workmen in extra hazardous employments for certain permanent partial disabilities, Laws 1919, p. 355, § 4, the law is mandatory; and the provision in subd. g (p. 363) to the effect that, in case of a further accident to a recipient of a lump sum, his final compensation shall be adjudged with regard to the combined effect of his injuries, cannot be applied to contract or limit the award in case of another disability within the schedule.

MOUNT and MACKINTOSH, JJ., dissent.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered July 27, 1920, in favor of the plaintiff, upon overruling a demurrer to the complaint, upon an appeal and action to reverse an award by the industrial insurance commission, for personal injuries. Affirmed.

*The Attorney General* and *Frank P. Christensen, Assistant,* for appellants.

*Newman, Howard & Kindall,* for respondent.

HOLCOMB, J.—On December 4, 1917, respondent, while engaged in an extra hazardous occupation, re-

[1] Reported in 196 Pac. 17.

ceived an injury which resulted in the loss of one eye by enucleation, for which he received compensation from the industrial insurance commission in the sum of twelve hundred dollars. On July 9, 1919, he was again injured while engaged in an extra hazardous occupation, which injury resulted in the loss of his major arm at the shoulder. He duly made claim to the appellant commission for compensation for the latter injury, and on November 25, 1919, he was awarded time loss from October 9, 1919, to November 6, 1919, in the sum of $48.45, and an award for permanent partial disability in the sum of eight hundred dollars. The commission, in making the award for permanent partial disability, notified respondent that, under the statute, the award for the injury would have been nineteen hundred dollars; but, by reason of the award of twelve hundred dollars previously made for the loss of an eye, it was limited to the sum of eight hundred dollars as compensation for the second injury, since the statute provides that two thousand dollars is the maximum amount payable by law for a permanent partial disability.

Notice of appeal from this final award was given by respondent, and he filed a complaint setting forth the facts herein stated praying for judgment reversing the decision of the commission, and that it be directed by the court to award respondent the sum of nineteen hundred dollars for the loss of his major arm, and for time loss in the sum of $48.45.

Appellant's demurrer to the respondent's complaint was by the court overruled, and judgment reversing the decision of the commission and directing it to award to respondent the sum of nineteen hundred dollars for the loss of his major arm, and the sum of $48.45 for time loss, was entered upon appellant's announcement that it would stand upon its demurrer

and decline to further plead. From this judgment, entered July 27, 1920, the commission appeals to this court, and contends that the lower court erred in (1) overruling defendant's demurrer to the claimant's complaint, and (2) in directing that an award be made to plaintiff in any sum in excess of eight hundred dollars for the loss of his major arm.

The workmen's compensation act, as originally enacted, provided as follows:

"(f) Permanent partial disability means the loss of either one foot, one leg, one hand, one arm, one eye, one or more fingers, one or more toes, any dislocation where the ligaments are severed, or any other injury known in surgery to be permanent partial disability. For any permanent partial disability resulting from an injury, the workman shall receive compensation in a lump sum in an amount equal to the extent of the injury, to be decided in the first instance by the department, but not in any case to exceed the sum of $1,500.00. The loss of one major arm at or above the elbow shall be deemed the maximum permanent partial disability.

"(g) Should a further accident occur to a workman already receiving a monthly payment under this section for a temporary disability, or who has been previously the recipient of a lump sum payment under this act, his future compensation shall be adjusted according to the other provisions of this section and with regard to the combined effect of his injuries, and his past receipt of money under this act." Laws of 1911, p. 360, § 5, (Rem. Code, § 6604-5).

These two sections were before this court in the case of *Biglan v. Industrial Ins. Comm.*, 108 Wash. 8, 182 Pac. 934, wherein it was held that where one has suffered a permanent partial disability and received a lump sum payment therefor, upon the sustaining of a second permanent partial disability, his compensation is to be adjusted according to the combined effect of his injuries and his past receipt of money under the act. The *Biglan* case was decided upon a case arising under

the original act above quoted. The legislature amend-
ed the law in 1917, and also in 1919, so that the law
now reads as follows:

"(f) Permanent partial disability means loss of
either one foot, one leg, one hand, one arm, one eye,
one or more fingers, one or more toes, any dislocation
where the ligaments were severed where repair is not
complete, or any other injury known in surgery to be
permanent partial disability. For the permanent par-
tial disabilities here specifically described, the injured
workman shall receive compensation as follows:

Loss of one leg amputated so near the hip
    that an artificial limb cannot be worn.....$2,000.00
Loss of one leg at or above the knee so that an
    artificial limb can be worn............... 1,900.00
Loss of one leg below the knee.............. 1,300.00
Loss of the major arm at or above the elbow.. 1,900.00
Loss of the major hand at wrist............ 1,600.00
Loss of one eye by enucleation............. 1,200.00
Loss of sight of one eye.................... 900.00
Complete loss of hearing in both ears........ 1,900.00
Complete loss of hearing in one ear......... 500.00

"Compensation for any other permanent partial
disability shall be in the proportion which the extent
of such other disability shall bear to that permanent
partial disability above specified which most closely
resembles and approximates in degree of disability
such other disability, but not in any case to exceed
the sum of two thousand dollars ($2,000.00).   .   .   .

"(g) Should a further accident occur to a work-
man who has been previously the recipient of a lump
sum payment under this act, his future compensation
shall be adjudged according to the other provisions
of this section and with regard to the combined effect
of his injuries, and his past receipt of money under
this act.

"Should such further accident result in the perma-
nent total disability of such injured workman, he shall
receive the pension to which he would be entitled not-
withstanding the payment of a lump sum for the prior
injury." Laws of 1919, Ch. 131, p. 362, § 4.

The amendment last quoted above is the same as that amendment made to the 1911 law and subdivisions (f) and (g) by Ch. 28, Laws of 1917, p. 81, § 1, and appellants contend that these amendments are substantially the same as the 1911 act, except that the law now specifies and sets forth a schedule of awards to be made by the commission for the specific injury, and that the maximum amount to be received is raised from fifteen hundred dollars to two thousand dollars. In the 1911 act, it is specified that the loss of one major arm above the elbow shall be deemed a permanent partial disability. The 1919 act does not specify what injury constitutes a maximum, but it is therein specified that two thousand dollars is the sum to be awarded for the loss of one leg amputated so near the hip that an artificial limb cannot be worn, and it recites that the payment shall not in any case exceed the sum of two thousand dollars. Appellants therefore contend that this case is governed by our decision in *Biglan v. Industrial Ins. Comm., supra.*

The statute we had before us in the *Biglan* case did not provide for a specific schedule of compensation to be awarded to injured workmen. The present statute does provide a specific schedule and declares that, for the permanent partial disabilities here specifically described, the injured workman shall receive compensation as follows: "Loss of the major arm at or above the elbow $1,900; loss of one eye by enucleation $1,200." The general provision following the schedule relates to compensation for any *other* permanent partial disability, and declares that it shall be in proportion to the extent that such *other* disability (that is not in the schedule above) shall bear to that permanent partial disability above specified which most closely resembles and approximates in degree of disability such other disability, but not in any case to exceed

the sum of two thousand dollars. This maximum of two thousand dollars clearly relates to nothing else than an unscheduled disability which may be rated by the commission as a permanent partial disability.

The enactment of this specific schedule of awards certainly indicates that, from experience in the operation of the industrial insurance compensation system, it was found best to fix and make certain specific amounts for specific injuries, and not leave injuries to be classified by the commission with only the maximum for their guidance.

We have always endeavored to interpret the industrial insurance act liberally with a view of accomplishing the result intended, which was, as stated in the first case we decided bearing upon the act and upholding its constitutionality, to substitute for an unscientific and burdensome system a system which will make an award in all cases regardless of the cause or manner of infliction, limited in amount, it is true, but commensurate in some degree with the disability suffered. *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, 2 N. C. C. A. 823, 3 N. C. C. A. 599. See, also, *Peet v. Mills,* 76 Wash. 437, 136 Pac. 685, Ann. Cas. 1915 D 154, L. R. A. 1916 A 358; *Stertz v. Industrial Ins. Com.,* 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918 B 354; *Foster v. Industrial Ins. Com.,* 107 Wash. 400, 181 Pac. 912.

There is some uncertainty as to the meaning of subdivision (g) of the amendment of 1919, Laws of 1919, p. 363, providing that, where

"a further accident occurs to a workman who has been previously the recipient of a lump sum payment under this act, his final compensation shall be adjudged according to the other provisions of this section, and with regard to the combined effect of his injuries and his past receipt of money under this act."

Thus, under the last clause of the above subdivision, the commission, acting with cautious discretion, thought that they were required to deduct the amount already received from the maximum amount possible to be received by a disabled workman under the act. But statutes must be construed as a whole and that construction given, where possible, that will harmonize the entire statute and make it sensible and effective. 2 Lewis' Sutherland's Statutory Construction (2d ed.), § 489. Applying these principles to the construction of the statute before us, it is manifest that, in enacting the schedules provided in the acts of 1917 and 1919, materially changing the phraseology and legal effect of the original act of 1911, the legislature intended to provide for all cases of disability permanent in character but partial in effect; and in adopting the schedule therein, to provide for definite amounts for those certain specified injuries, the amount being graduated according to the magnitude of the injury. To the extent of such specific provisions, the law is mandatory, and being mandatory, cannot be enlarged or contracted beyond its express terms. The provision in the last paragraph of subdivision (f) of § 1, of the act of 1919, providing for compensation for other permanent partial disability, is very general, broad, and comprehensive, and leaves no room for distinction between the injuries specifically provided for in the schedule and those which fall under these general provisions. *In re Maranovitch,* 65 Ind. App. 489, 117 N. E. 530; *In re Good,* 65 Ind. App. 426, 117 N. E. 520.

It is probable that the last clause of subdivision (g) refers to the general provisions of the last paragraph of subdivision (f), or to injuries to the same member which has been previously compensated within the maximum, and to which a subsequent injury was sustained,

and still leave the injured workman only permanently partially disabled; as, for instance, where he may lose a leg below the knee and receive thirteen hundred dollars, and afterwards while engaged in a hazardous occupation, sustain another injury resulting in the loss of that leg at or above the knee, so that an artificial limb could be worn, thus leaving him entitled to only the difference between thirteen hundred dollars and nineteen hundred dollars; or he might sustain the loss of the same leg so that an artificial limb could not be worn entitling him to two thousand dollars, and in that case the commission would be required to regard the combined effect of his injuries and his past receipt of money, so that he would be entitled to the difference between what he had received and what he would be entitled to for the maximum of the scheduled loss; otherwise it would be impossible to harmonize the provisions of subdivision (g) with the rest of the act. Subdivision (f) provides that, for the permanent partial disabilities here specifically described, "the injured workman shall receive compensation as follows:" then fixes the amount for each such injury and therein provides for compensation of twelve hundred dollars for the loss of an eye by enucleation, and nineteen hundred dollars for the loss of the major arm above the elbow.

We consider that the *Biglan* case, *supra,* does not govern this case. We are of the opinion that the present statute means exactly what it says, and that the commission was in error in its award, and the trial court was right.

The judgment of the trial court is affirmed.

PARKER, C. J., TOLMAN, FULLERTON, and BRIDGES, JJ., concur.

MOUNT and MACKINTOSH, JJ., dissent.