[No. 27094. *En Banc.* May 2, 1939.]

THE STATE OF WASHINGTON, *on the Relation of P. S. Sater et al., Appellants,* v. THE STATE BOARD OF PILOTAGE COMMISSIONERS *et al., Respondents.*[1]

'Reported in 90 P. (2d) 238.

*Cheney & Hutcheson* and *John Gavin,* for appellants.

*The Attorney General, Browder Brown, Assistant,* and *W. H. Hayden,* for respondents.

JEFFERS, J.—This action was instituted by P. S. Sater, Erick Arnsten, J. E. Brinker, Alex G. Halstead, M. M. Jensen, and Ernst Landstrom, to obtain a writ of mandate requiring the board of pilotage commissioners of this state, and the members thereof, to examine relators and all other eligible applicants for appointment as state licensed pilots. To the complaint, as amended, a demurrer was interposed and sustained. The relators not pleading further, the action was dismissed. Relators have appealed from the judgment of dismissal.

In 1935, the legislature passed an act regulating pilots and pilotage on the waters of Puget sound and adjacent inland waters (Laws of 1935, chapter 18, p. 36, Rem. Rev. Stat. (Sup.), § 9871-1 [P. C. § 4471-21] *et seq.*). Section 1 thereof, p. 36 (Rem. Rev. Stat. (Sup.), § 9871-1 [P. C. § 4471-21]), creates a board of pilotage commissioners, to consist of the director of labor and industries of the state of Washington, *ex-officio,* who shall be chairman of the board, and four members appointed by the governor.

Section 3, p. 37 (Rem. Rev. Stat. (Sup.), § 9871-3 [P. C. § 4471-23]), defines what is meant by "Puget

sound and adjacent inland waters," wherever referred to in the act.

Section 8, p. 39 (Rem. Rev. Stat. (Sup.), § 9871-8 [P. C. § 4471-28]), provides that no person shall pilot any vessel, subject to the provisions of the act, on Puget sound or adjacent waters, unless he be appointed and licensed to pilot such vessels on such waters, under and pursuant to the provisions of the act. No person shall be eligible to be appointed a pilot unless he is a citizen of the United States, over the age of twenty-five years, and has been a resident of the state of Washington for at least three years immediately prior to the time of his appointment, has a practical knowledge of the navigation of vessels and of the conditions of navigation in the waters for which he desires to be licensed, is of good moral character, temperate in his habits, possesses the skill and ability necessary to discharge the duties of pilot, nor unless he holds a first class United States government license to pilot on Puget sound and adjacent inland waters.

Section 9, p. 39 (Rem. Rev. Stat. (Sup.), § 9871-9 [P. C. § 4471-29]), provides:

"The board is authorized and shall have power to make rules and regulations not in conflict with this act covering the matters hereinafter set forth which shall have the force and effect of law until altered, repealed or set aside by action of the board:

"(a) To establish the qualifications of pilots, provide for their examination and the issuance of licenses to qualified persons and to keep a register of licensed pilots and of vessels, operators and agents.

"(b) To provide for the maintenance of efficient and competent pilotage service on all waters covered by this act. . . .

"(d) To do such other things as are reasonable, necessary and expedient to insure proper and safe pilotage upon the waters covered by this act and to facilitate the efficient administration of this act."

The complaint herein alleges that each of the appellants is a citizen of the United States, over the age of twenty-five years, and has been a resident of the state of Washington for more than three years; that each has, for a number of years, been engaged in and has followed the occupation of master, mate and pilot of deep water vessels of the type engaged in general ocean trade, has navigated such vessels upon and about Puget sound and its adjacent inland waters, and has acquired, through years of actual experience, a practical knowledge of the navigation of ocean-going vessels, and a knowledge of the conditions of navigation on Puget sound and adjacent inland waters; that each is of good moral character and a man of temperate habits; and that each holds a first class United States government license authorizing him to act as a pilot on Puget sound and adjacent inland waters.

It will be seen that, according to the allegations of the complaint, each of the appellants possesses all of the qualifications required by the statute.

It is further alleged that each of the appellants made written application to the board for an examination, listing his qualifications, and accompanying his application with the statutory fee of one hundred dollars. Appellant Sater filed his application about June 2, 1937; appellants Brinker and Halstead filed their applications on or about February 10, 1936; appellants Jensen and Landstrom filed their applications on or about June 10, 1935. The board acknowledged receipt of the application of each appellant, but in each instance returned the fee and refused, and has at all times since refused, to permit the applicant to take an examination.

The complaint further alleges that, on or about June 11, 1935, the board held an examination; that appellants Jensen and Landstrom, although not advised by

the board, learned through other sources that an examination was to be given, and appeared and requested the right to take the examination; that the board denied them the right, limited the examination to a selected group of favorites, and, pursuant thereto, subsequently issued licenses to twenty-one of such applicants; that, on or about August 9, 1935, the board issued a license to one Fred J. Johnson without a competitive examination.

Prior to March 5, 1936, regulation No. 17 had been adopted by the board, and was in full force and effect, which regulation reads as follows:

"The examination of applicants shall be held twice each year, January 15th and July 15th, unless otherwise designated by the board of pilotage commissioners."

On March 5, 1936, the board amended regulation No. 17 to read as follows:

"Competitive examinations of applicants shall be held at such time as may be designated by the commission as the need for further and additional pilots develops, to maintain efficient and adequate pilot service on Puget sound and adjacent inland waters."

The complaint alleges that the applications of all of the appellants, except P. S. Sater, were filed prior to the amendment of regulation No. 17; that, on September 8, 1937, a state pilot's license was issued to P. C. Fraatz without holding a competitive examination; that state pilot's licenses were issued by the board to P. C. Fraatz and Fred J. Johnson, although neither of these individuals held a first class United States government pilot license for Puget sound and adjacent inland waters; that, with one exception, all the persons to whom licenses have been issued by the board are members of a local association, which local is a member of

the national organization of masters, mates, and pilots, to which the two pilot members of the board belong.

Appellants claim the lower court erred in entering its order of March 14, 1938, sustaining the demurrer to and dismissing the complaint, as amended. It should be kept in mind that, in considering this demurrer, we must accept as true the facts well pleaded in the complaint.

In construing the act from which respondents claim to derive their authority, we should attempt to give to the entire act, and to each and every part thereof, a reasonable and fair interpretation, and one which will harmonize the entire statute and make the provisions thereof consistent and harmonious. 59 C. J. 995, § 595; *Klippert v. Industrial Ins. Department,* 114 Wash. 525, 196 Pac. 17.

It may be conceded that an administrative board, such as respondent, has considerable discretion in carrying out its duties, and that, as a general rule, such discretionary powers are not subject to review by the courts. This is not, however, a universal rule. If the action of a board is arbitrary or capricious, or was prompted by wrong motives, there is not only an abuse of discretion, but, in contemplation of law, there has been no exercise of the discretionary power, and in such cases the law will, by mandamus, compel the tribunal to act honestly and fairly. *State ex rel. Brown v. Board of Dental Examiners,* 38 Wash. 325, 80 Pac. 544; *State ex rel. Yeargin v. Maschke,* 90 Wash. 249, 155 Pac. 1064.

We agree with respondents that the court may not substitute its judgment for that of the board, and direct that licenses be issued to appellants, or to any particular person, or that any definite number of pilots be licensed, or fix any definite time when examinations shall be held, or prescribe the general conditions

under which such examinations shall be conducted. However, we believe there are certain duties required of respondents by the act, which are mandatory, and in which respondents have no discretion. We think it is mandatory that the board provide for competitive examinations; that they permit such examination to be taken by any person whose application, showing him to have the statutory qualifications, together with the statutory fee, is on file with the board at the time such examination is given; and that licenses be issued only after examinations have been taken, and then only to applicants having the qualifications prescribed by the statute.

We are clearly of the opinion that appellants Landstrom and Jensen should have been permitted to take the examination on June 11, 1935, and that for the benefit of these two appellants, at least, the board should be compelled to hold an examination.

Appellants contend that, if a fair and reasonable construction is given to the act, it would violate no constitutional provision; but that it would violate both Art. I, § 12, of the state constitution, and the fourteenth amendment of the constitution of the United States, if construed as contended for by respondents, to the effect that the board is therein given authority to issue a license to any applicant they may believe to be qualified, regardless of whether or not he has taken an examination, or has the qualifications prescribed by the statute, and that it gives to the board the right to limit the number of licenses issued.

We agree with appellants that the act would be unconstitutional if given the construction contended for by respondents, in that it would leave to the board the right to determine to whom licenses should be issued upon a personal basis, at the will and pleasure of the board, and not upon any basis prescribed by the

legislature. It would vest in the board arbitrary power to license one applicant and refuse to license another, although qualified in every respect. *Seattle v. Gibson,* 96 Wash. 425, 165 Pac. 109; *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 Pac. 845, 12 A. L. R. 1428; *Yick Wo v. Hopkins,* 118 U. S. 356, 30 L. Ed. 220, 6 S. Ct. 1064; *People ex rel. Lieberman v. Van De Carr,* 199 U. S. 552, 50 L. Ed. 305, 26 S. Ct. 144.

All of the foregoing cases were rested upon the principle that an ordinance which authorizes the issuing or withholding of a license to engage in a lawful business, that is, a business which within itself is perfectly lawful, and commits to any officer or set of officers the power to decide, according to their own notions in each particular case, the question of the propriety of issuing or withholding a license therefor, and thus deciding who may and who may not engage in such business, is authorizing the exercise of arbitrary power in violation of the fourteenth amendment of the constitution of the United States. In § 12, of Art. I, of our state constitution, we find the same guaranty, in substance, as follows:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

Respondents contend that the board has the right to limit the number of licenses issued. We find nothing in the act specifically giving to the board such right. If the board has such power, it must be by virtue of those provisions in § 9 which authorize the board to make rules and regulations to establish the qualifications of pilots, provide for their examinations and issuance of licenses to qualified persons; to provide for the maintenance of efficient and competent pilotage service; and to do such other things as are rea-

sonable, necessary, and expedient to insure proper and safe pilotage and to facilitate the efficient administration of the act. We are unable to understand how the limitation upon the number of pilots to be licensed will contribute to a better pilotage service. In any event, it seems to us, if the legislature had intended to vest the board with this authority, it would have done so by specifically so stating.

In support of their contention that they may limit the number of pilots, respondents seem to rely principally upon *Olsen v. Smith,* 195 U. S. 332, 49 S. Ct. 224; *Caples v. McNaught,* 147 Ore. 72, 31 P. (2d) 780; and *Palmer v. Woodbury,* 14 Cal. 43. In the *Olsen* case, *supra,* the constitutionality of a pilotage act of the state of Texas was questioned, on the theory that the legislature had no right to attempt to regulate pilotage service, as it was not subject to governmental control. This act conferred upon the governor of the state of Texas the authority to appoint any number of branch pilots that might from time to time be necessary.

In the *Caples* case, the pilot commissioners under the Oregon statute were given authority to maintain a sufficient number of pilots upon the bar and river pilot ground to meet the demand of commerce. It further appears from the case that the complaint did not show that there had been any abuse of discretion on the part of the pilot commissioners.

In the *Palmer* case, the board of pilot commissioners was specifically given authority to appoint such number of pilots as it deemed necessary, not exceeding thirty, which number was, by the amendatory act of 1858, reduced to twenty.

We believe the cases last above referred to are distinguishable on the facts from the instant case, and that also in those cases the legislature of the respective

states either directly or by implication conferred authority on a board or individual to limit the number of pilots. Our statute confers no such power on the board, either expressly or by implication. The board herein has assumed to exercise such power by virtue of regulation No. 17, as amended March 5, 1936.

We are of the opinion that, under this act, it is the duty of the board to hold competitive examinations, at such times as will, under a reasonable interpretation of the act, insure the maintenance of an efficient and competent pilotage service.

We think it is also apparent, from the allegations of the complaint, that the board has acted arbitrarily and capriciously, in that it has refused to allow two of appellants to participate in an examination actually held; it has limited the applicants who may take the examination to members of an organization of which two of the board are members and has excluded other qualified applicants; it has appointed certain persons to be pilots without subjecting them to examinations; it has appointed to that position certain individuals who do not hold first class United States government licenses. If the board may do these things, then the discretion reposed in it is nothing short of a license to do as it pleases.

The judgment is reversed, and the cause remanded with directions to overrule the demurrer and proceed in accordance with the views herein expressed.

STEINERT, BEALS, MILLARD, SIMPSON, and GERAGHTY, JJ., concur.

MAIN, J. (dissenting)—I find no language in the pilotage act (Laws of 1935, chapter 18, p. 36) which makes it the mandatory duty of the pilot commissioners to hold examinations for pilotage service at any time or issue licenses to all who may apply and be

qualified. Neither do I find any language in the act from which such mandatory duties could be implied, if the imposition of mandatory duties can arise out of an implication. The act confers upon the commissioners broad powers and gives to them a wide discretion.

Section 8, p. 39, provides that no person shall pilot any vessel, subject to the provisions of the act, on Puget sound or adjacent inland waters, unless he "be appointed" and licensed to pilot such vessel thereon, under and pursuant to the provisions of the act; and further provides that no person shall be eligible to be "appointed a pilot" unless he possesses the qualifications specified therein.

Section 9, p. 39, provides that the board is authorized to make rules and regulations, not in conflict with the act, covering the matter set forth therein, to establish the qualifications of pilots and provide for their examination, to issue licenses to qualified persons, to provide for the maintenance of efficient and competent pilotage service on the waters covered by the act, to do such other things as are reasonable and necessary to insure proper and safe pilotage on the waters covered by the act, and to facilitate the efficient administration thereof.

The apparent purpose was to give the board of pilot commissioners complete jurisdiction over the pilotage service on the waters covered by the act. Waters covered thereby being navigable waters of the United States, it was primarily within the power of Congress to regulate and control the pilotage service thereon. Congress not having acted, the state had a right to make such regulations. A state legislature may, in the absence of Congress having acted, provide that the number of pilots may be limited or controlled by an executive officer thereof or a board of commissioners.

In *Palmer v. Woodbury*, 14 Cal. 43, an act of the state of California was sustained which provided for a board of commissioners and gave them power to appoint such number of pilots as they might deem necessary, not exceeding thirty. There, it was left to the judgment or discretion of the board to determine the number of pilots, with only the provision of having the maximum number fixed by the legislature.

In *Caples v. McNaught*, 147 Ore. 72, 31 P. (2d) 780, an act of the legislature was sustained which created a board of pilot commissioners and made it its duty, under the act, " 'to maintain a sufficient number of pilots upon the bar and river pilot grounds to satisfy the demands of commerce, . . . ' " There, the legislature conferred upon the pilot commissioners the power to determine the number of pilots.

In *Olsen v. Smith*, 195 U. S. 332, 49 L. Ed. 224, 25 S. Ct. 52, an act of the legislature of the state of Texas was sustained which conferred upon the governor of the state the power to appoint such number of branch pilots as might from time to time be necessary, and it was there said:

"It remains only to consider the contention based upon the Fourteenth Amendment and the anti-trust laws of Congress. The argument is, that the right of a person who is competent to perform pilotage services to render them is an inherent right guaranteed by the Fourteenth Amendment, and that therefore all state regulations providing for the appointment of pilots and restricting the right to pilot to those duly appointed, are repugnant to the Fourteenth Amendment. But this proposition in its essence simply denies that pilotage is subject to governmental control, and therefore is foreclosed by the adjudications to which we have previously referred. The contention that because the commissioned pilots have a monopoly of the business, and by combination among themselves exclude all others from rendering pilotage services, is also but

a denial of the authority of the State to regulate, since if the State has the power to regulate, and in so doing to appoint and commission, those who are to perform pilotage services, it must follow that no monopoly or combination in a legal sense can arise from the fact that the duly authorized agents of the State are alone allowed to perform the duties devolving upon them by law. When the propositions just referred to are considered in their ultimate aspect they amount simply to the contention, not that the Texas laws are void for want of power, but that they are unwise. If an analysis of those laws justified such conclusion—which we do not at all imply is the case—the remedy is in Congress, in whom the ultimate authority on the subject is vested, and cannot be judicially afforded by denying the power of the State to exercise its authority over a subject concerning which it has plenary power until Congress has seen fit to act in the premises."

So far as I am informed, no act of a legislature which conferred the power upon an executive officer or a board of commissioners to fix or limit the number of persons who might engage in the pilotage service, has been held unconstitutional.

Cases which hold that an ordinance of a municipality which authorizes the issuing or withholding of a license to engage in a lawful business and commits to an officer or set of officers the power to decide the number of persons that shall engage in that business, have no application to an act of the legislature which vests in a board of pilot commissioners the power to license and determine who shall render a pilotage service, and limiting the number thereof.

Pilotage regulations are regulations of commerce upon navigable waters, and in *Ex parte McNiel,* 80 U. S. 236, 20 L. Ed. 624, it was said:

"It must be admitted that pilot regulations are regulations of commerce. A pilot is as much a part of the commercial marine as the hull of the ship and the helm by which it is guided; and half-pilotage, as it is called,

is a necessary and usual part of every system of such provisions."

It seems to have been the thought of the legislatures that have enacted pilotage laws, and the courts that have sustained them, that it is necessary to limit the number of pilots in order to maintain an efficient pilotage service.

In my opinion, the judgment in the case now before us should be affirmed; and, for the reasons indicated, I dissent.

BLAKE, C. J., concurs with MAIN, J.