[No. 36969.    Department Two.    July 9, 1964.]

ROBERT O. DESCHAMPS, *Appellant*, v. PHILIP H. LUTHER *et al.*, *Respondents.**

*John Spiller* and *Frederick Paul,* for appellant.

*Soriano & Soriano,* for respondents.

EDGERTON, J.†—Claiming defendants conspired to prevent him from becoming a licensed Puget Sound pilot, the plaintiff, Robert O. Deschamps, sued to recover the alleged resulting damages. The defendant Philip H. Luther was a

*Reported in 393 P. (2d) 945.

†Judge Edgerton is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

member of the Board of Pilotage Commissioners, a board authorized by statute to establish qualifications of pilots, provide for their examination and licensing, and the defendant Dewey Soriano is a Puget Sound pilot, who obtained his license during the period of the alleged conspiracy.

This controversy had its beginnings in September, 1957, when the plaintiff asked the secretary of the Board of Pilotage Commissioners for an application to take the examination for a Puget Sound pilot's license. The minutes of the board for September 5, 1957, reflect this request. They also contain this statement: "The secretary was instructed to write Capt. Deschamps advising that no examination is pending and that he will be notified when one is to be held."[1]

At that time, the results of examinations of 10 applicants, given in 1955, were still pending. Some of these applicants had not passed and a re-evaluation of their examinations was being made by defendant Luther and Captain Thomsen, another board member. Eventually, nine of the applicants were passed by the board and the tenth, Norman Laine, remained unsuccessful until given another examination in March, 1958. He, too, then passed and was licensed. Plaintiff contends he was entitled to be examined at that same time, and in the fall of 1959, based on that contention, obtained a writ of mandate from the Thurston County Superior Court directing the board to accept his application for examination. The court held that plaintiff should have been examined with Laine in March, 1958, and that failure to afford him that opportunity was both arbitrary and capricious.

The defendant Luther, a member of the Board of Pilotage Commissioners when the writ issued, appealed, but on June 3, 1960, that appeal was dismissed because Luther had, in the meanwhile, ceased to be a board member. Also on

---

[1] It is the duty of the board to hold competitive examinations at such times as will, under a reasonable interpretation of the act, insure the maintenance of an efficient and competent pilotage service. *State ex rel. Sater v. State Bd. of Pilotage Com'rs,* 198 Wash. 695, 90 P. (2d) 238.

June 3, 1960, the defendants Luther and Soriano petitioned and obtained from the Thurston County Superior Court an alternative writ prohibiting the board from examining plaintiff or, in the alternative, barring plaintiff from taking the examination. When it became known defendant Luther's appeal in the mandamus proceeding was dismissed, his alternative writ of prohibition was quashed. Ultimately, an appeal of this last order was dismissed also. Then, on supplemental petition, plaintiff, having sought and obtained a further writ of mandate, was examined in March, 1961, and, in due course, was issued a pilot's license.

The evidence in this case consisted of the testimony of four witnesses and 70 documentary exhibits, 29 of which are minutes of the pilotage board. Of the witnesses, two testified essentially to the identity of exhibits only. The testimony of plaintiff was limited to damages alone. Defendant Luther, so far as material to plaintiff's case, was examined only with regard to a letter he wrote one Captain Eikum suggesting he send in a state pilot's license application at a time when other applications were being discouraged or rejected. (The letter may cast a reflection on that defendant by showing his willingness to play favorites, but is otherwise immaterial to any issue in this case.)

The trial court found no evidence of a conspiracy and dismissed the case on a challenge to the sufficiency of the evidence. From this decision the plaintiff appeals.

There is no direct evidence of an agreement between the two defendants to conspire against the plaintiff. The question, then, is, does the record contain circumstantial evidence of a conspiracy?

Plaintiff first charges that defendant Luther and Captain Thomsen, after a re-evaluation of examination results, passed nine of the ten 1955 applicants without the concurrence of the board. The minutes of the board, signed as they are by all members of the board, dispel this contention.

Plaintiff's complaint charged the board was arbitrary and capricious in its conduct when it failed and neglected to examine him with Norman Laine in March, 1958. The board's position is that the Laine examination was simply

a re-examination, not a new examination, and, consequently, no notice to plaintiff was required.

The board was aware of plaintiff's wish to apply and be examined. Nonetheless, neither then nor later did it take action on plaintiff's application until forced to do so by court order. While its actions in this regard were dilatory and perhaps arbitrary, as found by the Thurston County Superior Court in the mandamus case previously mentioned, and are not condoned by this court, they do not aid plaintiff's case. There is no showing of any agreement or planned course of action to prevent plaintiff from taking the examination. It was not shown that defendant Soriano had any connection with the board's delay and refusal to examine plaintiff.

Defendant Luther did appeal from the writ of mandate directing the board to admit plaintiff to examination. No longer a board member, his appeal was dismissed on the ground he had no standing. This appeal, not unlawful in itself, again was but an individual action on Luther's part, with which his codefendant had no connection.

It should be remembered defendant Luther could not conspire by himself. Conspiracy requires a combination of two or more persons to commit a criminal or unlawful act or to commit a lawful act by unlawful means. *Eyak River Packing Co. v. Huglen,* 143 Wash. 229, 234, 255 Pac. 123; 257 Pac. 638.

Plaintiff alleges

" . . . the two [defendants] having theretofore conspired together, and agreed upon a concert of action designed to prevent the plaintiff from being admitted to pilot's license or to examination for such license, sought by application in Thurston County Superior Court . . . a writ of prohibition against the Board and the plaintiff herein . . . "

It has been held that a person has no right to use the processes of the courts when his sole purpose is to wrong and injure another or to compel the other to do some act against his will. *Eyak River Packing Co. v. Huglen, supra.*

This suit of Luther and Soriano against plaintiff and the board for a writ of prohibition is the heart of plaintiff's case. If there is a conspiracy in this case, it must be found from the circumstance of these defendants jointly bringing that lawsuit for a writ of prohibition. Is this a circumstance showing a conspiracy on the part of defendants against plaintiff? That would depend on the motives and objects of the petitioners. If those motives and objects were wrong and malicious, they could support the claim of conspiracy.

Plaintiff asserts that defendants' petition for the alternative writ of prohibition alleged that

". . . admitting plaintiff herein to examination for, and to, pilot's license would injure them financially in that there would be one additional licensed pilot with whom piloting services in Puget Sound and adjacent inland waters, and fees therefor, would have to be shared; . . ."

If true, this very well might be an unlawful ground upon which to predicate a denial of right to take the examination and obtain a license. But this is not what Luther and Soriano alleged. Rather, the petitioners grounded their demands on a lack of jurisdiction in the board and the claimed fact that Deschamps lacked requisite qualifications for admission to the examination.

■■ There is no extrinsic evidence of defendants' purposes outside the wording of the petition itself. Its language simply raises a legitimate inquiry into the board's authority to examine and the plaintiff's eligibility to be examined. To challenge the board's right to give the examination because the applicant was not qualified was a lawful purpose. Where the allegations of the pleadings are consistent with a lawful purpose, express a lawful purpose, and there is no evidence from which another and ulterior purpose can be found, the bringing of a lawsuit can neither be said to be reprehensible nor conspiratorial.

The judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.