[No. 26519.  *En Banc.*  January 10, 1938.]

CLARENCE E. AMES, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

BLAKE, MAIN, and HOLCOMB, JJ., dissent.

*John S. Lynch,* for appellant.

*The Attorney General, J. A. Kavaney, Assistant (V. D. Bradeson,* of counsel), and *Thos. L. O'Leary,* for respondent.

[1]Reported in 74 P. (2d) 1027.

GERAGHTY, J.—The appellant, on December 31, 1931, filed a claim with the department of labor and industries on account of injuries sustained December 9, 1931, in the course of extrahazardous employment. The department, on February 15, 1932, rejected the claim on the ground that the claimant failed to prove that an accident had occurred in the course of his employment. On October 12, 1932, he appealed to the joint board of the department, which denied relief on the ground that his right of appeal was barred by the statute of limitations (Rem. Rev. Stat., § 7697 [P. C. § 3488]), which requires an appeal to the joint board within sixty days from notice of the decision of the department.

The claimant appealed to the superior court, which reversed the order of the joint board on the ground that claimant was mentally incompetent from the time his right of appeal to the joint board began to run until October 3, 1932. From the judgment so entered, the department appealed to this court. The judgment of the superior court was affirmed by this court, it being held that the statute of limitations (Rem. Rev. Stat., § 7697) was tolled during the period of claimant's mental incompetency. *Ames v. Department of Labor & Industries,* 176 Wash. 509, 30 P. (2d) 239, 91 A. L. R. 1392. The claim was remanded to the department for further proceedings.

The department found that the claimant sustained injury while in the course of extrahazardous employment and awarded him thirty days' time loss. From this award, claimant appealed to the joint board, which affirmed the allowance. Claimant appealed to the superior court, which affirmed the order of the joint board. From the judgment so entered, claimant appeals to this court.

The department having found that appellant was

injured in the course of extrahazardous employment, the only question we have to determine is whether he has been adequately compensated. He insists that he is permanently and totally disabled as a result of his injuries. There seems to be no serious dispute that, since the time he was injured, appellant, because of his mental condition, has not been able to follow any gainful occupation.

Physicians called by him diagnose his condition as "traumatic neurosis"—directly attributable to the injuries he sustained in the accident of December 9, 1931. Physicians called by the department diagnose his condition as "psychosis"—attributable to constitutional deficiencies which antedated the accident. Their view is that the injuries sustained in the accident were not of such a character as to produce the condition from which appellant is suffering; that, apart from such constitutional deficiencies, he would have recovered within thirty days from the injuries sustained in the accident. To make a choice between the variant views of the experts, necessitates a somewhat detailed statement of the history of the case.

Concerning the accident, it will suffice to say that the appellant was working the night shift in the press room of the Olympia Veneer Company. On December 9, 1931, between six and seven o'clock in the evening, a caul board, four feet wide, eight feet long, and three inches thick, fell against him and knocked him over against a truck. He struck on his back, neck and head. He was unconscious for a short time, but continued with his work to the end of the shift. He worked on the 10th and 11th. In the evening of the 11th, he left the plant, started down the street, and began to "holler." The police picked him up and took him to the station. After detaining him a little while, they let him go, and he went back to work.

That was the last time he worked. The next day he consulted an osteopath. The day following that, the 14th, a physician called on him, but made no physical examination. On the 15th, appellant was taken before an insanity commission and committed to the Western State Hospital at Steilacoom. He was paroled on January 17, 1932, and discharged as cured October 3, 1932.

Appellant testified that he was by trade a stationary engineer; that he had followed mill work and construction work as a common laborer; that, up to the night of the accident, he was a strong and able-bodied man; that there was no insanity in his family; that he himself, up to that time, had manifested no mental symptoms.

While appellant's symptoms are all subjective, it is not intimated that he is malingering. There is no doubt that, at the time he was sent to Steilacoom, appellant was suffering from hallucinations and in a serious state of confusion. It is also undisputed that the first manifestation of mental disturbance occurred at a time normally to be expected from an injury to the head, that is, between two and three days after the occurrence.

Since he was paroled, he has suffered from pains in the head, double vision, numbness in his body, and vertigo. Sustained physical exertion brings on vomiting. That appellant is in a neurotic condition which incapacitates him from gainful labor, there can be no doubt. The physicians for the department assert, and for the most part appellant's physicians admit, that his condition is not demonstrable by physical or neurological examination. However, the appellant's physicians testified that he had a positive Romberg—indicating a disturbance in the brain affecting the semi-

circular canals. The physicians for the department asserted that "his was not a true Romberg."

Particular reference may be made to the testimony of Dr. Garhart, a specialist in diagnosis, x-ray, and clinical laboratory work, called by the appellant. He took x-rays of his head and vertebra and found no evidence of any fractures, dislocations, or bone pathology. The pictures showed a normal condition. However, later, he subjected the claimant to a spinal fluid examination. A lumbar puncture was made and some spinal fluid taken, which showed a cell count of sixteen—the normal count, as the doctor testified, being from one to seven. Asked what that indicated, he answered that it suggested an inflammatory reaction either to the meninges, the covering of the brain, or to the dura, the covering of the spinal cord.

With reference to the cell count as disclosed by his examination, he said:

"Of course all of those counts are merely relative and figuring it from the normal, it would suggest to me a low grade inflammatory condition and also at the time the spinal fluid was taken, it was found to be under increased pressure and along with the increased pressure and along with the increased cell count, it suggested a low grade inflammatory condition. . . . Q. You have many causes for inflammatory condition other than an injury or trauma? A. Almost any diseased condition might cause an increase. Q. And if you have this increase in cell count, that might account for the increase in the spinal fluid pressure also? A. Yes. Q. That is the same condition and that would give you the same cell count? A. Yes, it might account for the same increase in cell count and pressure. Q. You were not able to determine in this case what the cause of the increased pressure or cell count was other than some inflammation? A. Other than the history of trauma. Q. I mean from your examination? A. From my ex-

amination, I could not determine and of course all I had was the history and that's all I could go by. . . ."

This testimony was inconclusive because, as Dr. Garhart said, the inflammatory condition indicated by the cell count could have arisen from one of several causes. It might be induced by the accident which the claimant sustained, or it might have had relation to other ailments from which he suffered prior to the accident.

Dr. Lyda, an osteopath, testifying for the appellant, said that he had known him for fifteen years and had treated him for lumbago, for the lower part of the lumbar region, two or three times and for neuritis in his shoulder and neck at one time.

The appellant's plight is unfortunate and appealing, but, in the administration of the industrial accident fund, supported, as it is, wholly by a tax upon industry, the department can make disbursements of the fund only to those who come within the terms of the act. Whether or not a claimant, in any given case, is entitled to compensation, is to be determined by the department, in the first instance, with a right of review in the courts. The statute provides that the departmental decision shall be *prima facie* correct and the burden of proof shall be upon the party attacking it. To warrant a reversal of the decision, the court must find, upon the record, that the claimant has sustained the burden of proof. We are in agreement with the trial court that the claimant has not done so here.

The judgment is affirmed.

STEINERT, C. J., BEALS, MILLARD, ROBINSON, and SIMPSON, JJ., concur.

BLAKE, J. (dissenting)—As I see it, this decision proscribes *traumatic neurasthenia* as a compensable

injury under the industrial insurance act, notwithstanding the court has long recognized the condition as an injury for which alone substantial damages should be allowed. *Edwards v. Seattle etc. R. Co.,* 62 Wash. 77, 113 Pac. 563; *Eoff v. Spokane etc. R. Co.,* 70 Wash. 270, 126 Pac. 533; *Pierce v. Seattle Electric Co.,* 78 Wash. 167, 138 Pac. 666; *Mickelson v. Fischer,* 81 Wash. 423, 142 Pac. 1160; *Carton v. Eyres & Seattle Drayage Co.,* 117 Wash. 536, 201 Pac. 737.

That claimant is suffering from what we used to call *neurasthenia,* there can be no doubt. The experts all agree upon that—those for the department calling the condition *"a psychosis,"* those for the claimant, *"a neurosis."* But whatever the condition may be called, one thing is certain—that, because of it, claimant is incapacitated from sustained physical effort.

That his condition is the result of trauma, is to my mind demonstrated by the sequence of events following the accident. Indeed, there is no other cause suggested in the record or in the claimant's personal history, to which his condition can be ascribed. The decision of the department rests solely upon the negative testimony of experts (its own experts at that), whose opinion is not supported by any fact in the record or in the claimant's history.

I cannot agree that a departmental decision is *prima facie* correct, when it ignores facts and rests solely upon the opinion of medical experts. The experts will always disagree, and the department will always believe its own experts. The principle upon which this case is decided will make court review of departmental decisions an illusive formality, where there is conflict in medical testimony.

I dissent.

MAIN and HOLCOMB, JJ., concur with BLAKE, J.