[No. 28470.   Department One.   January 5, 1942.]

PURDY & WHITFIELD *et al., Appellants,* v. THE DEPART-
MENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 120 P. (2d) 858.

*Clarence L. Coleman* and *Thomas G. McCrea,* for appellants.

*The Attorney General, T. H. Little,* and *Roy A. Huse, Assistants,* for respondent.

STEINERT, J.—On May 14, 1939, Willis H. Benham, a logger, was struck by a falling tree and died the next day. Mabel Benham, his divorced wife and the mother of his three minor children, filed a claim with the department of labor and industries seeking a pension for the children. Purdy & Whitfield, undertakers, filed a claim for services rendered in connection with Benham's funeral. The supervisor of the department rejected both claims on the ground that the deceased was not, at the time of his injury, a workman within the purview of the workmen's compensation act. On rehearing, the joint board of the department sustained the action of the supervisor. Both claimants appealed to

the superior court for Snohomish county and, the claims having been consolidated, the action was tried by the court, without a jury, upon the departmental record. The court made findings of fact and conclusions of law to the effect that the department had properly construed the law and had correctly found the facts pertaining to the respective claims, and thereupon entered judgment dismissing the entire action. The claimants have appealed.

The basic question involved upon the appeal is whether Willis H. Benham, the deceased, was, at the time he received the injury, a workman in the employ of one R. H. Mathews, or whether Benham and Mathews were then partners engaged in a common venture. If Benham was a workman employed by Mathews, the claims should have been allowed. If, on the other hand, Benham and Mathews were partners in a common venture, the claims were rightly·rejected.

The record discloses that, after the claims were filed with the department, a full investigation of the matter was made by the supervisor, and there came to his attention the following facts.

In December, 1938, R. H. Mathews entered into an agreement with Everett Pulp & Paper Co., whereby Mathews bought from the pulp company certain stumpage, consisting of alder and maple timber, at a price ranging from one dollar and fifty cents to two dollars per thousand feet, to be paid for as the logs were cut and sold by Mathews. At about the same time, Mathews made arrangements with two mill companies, whereby he agreed to sell and deliver the logs to them, at stipulated prices.

For the purpose of the intended logging operation, Mathews rented a truck, agreeing to pay the owner two dollars and fifty cents per thousand feet of logs hauled therewith, and also rented a donkey engine for

which he agreed to pay its owner seventy-five cents per thousand feet of logs cut. These rental payments were likewise to be made from the proceeds of logs sold.

With the equipment thus acquired Mathews, working alone, entered upon the logging operation and continued in that manner until about April 20, 1939. While thus working, he lived in a small shack on the premises. During that period of time, Mathews made a number of sales and deliveries of logs to the two mill companies, against which he had previously issued orders for the payment of the stumpage, the rentals, and certain bills for repairs and merchandise.

On or about April 20, 1939, Willis H. Benham, who was a hardwood logger, met Mathews and sought employment from him. Mathews explained the conditions under which he was conducting his logging business and told Benham that the operation did not justify his hiring anyone. Either Benham or Mathews then suggested that they form a partnership. After some further discussion, the two men entered into what Mathews claimed was a verbal partnership agreement, under the terms of which they were to continue the logging operation together, Mathews to receive sixty per cent of the net profits and Benham the remaining forty per cent. Pursuant to that agreement, the two men built a shack on the logging premises, for occupancy by Benham, and Mathews also advanced to Benham certain sums of money with which to purchase bedding and groceries.

Thereafter, Benham cut a carload of logs which Mathews sold and delivered to one of the mills at a price of something over ninety dollars. Of that amount, Benham received forty per cent, less the advances that Mathews had previously made to him, and Mathews retained the remaining sixty per cent.

The two men then proceeded to cut and yard other logs on the same premises, but before these were delivered Benham sustained the injury of May 14, 1939, from which he died. On the day of the accident, and just shortly before its occurrence, both Mathews and Benham had been doing some work on the logging road on the premises. A few days before the accident, Benham had written to his brother Oliver at Fall City, stating that he was working for Mathews and further suggesting that he, Willis H. Benham, could give the brother a job at the place if he wanted it.

During the time of their association together, Mathews, in his dealings with certain third persons, referred to Benham as his partner. However, neither the officers of the pulp company nor those of the two mill companies had ever heard Mathews mention Benham's name. After Benham's death, his father told the department's investigator that Mathews had recently made a statement to Oliver Benham that the deceased had been receiving wages amounting to three dollars and fifty cents per thousand feet for felling, bucking, and yarding the logs. At no time had Mathews obtained industrial insurance coverage with reference to the logging operation.

Upon the information thus acquired, the supervisor of the department rejected the two claims. In their petitions for a rehearing by the joint board, the claimants averred that the supervisor had erred in holding that Benham was not an employee, and alleged that the facts would show that the relationship between Mathews and Benham had been that of master and servant, not one of partnership or joint venture. The petitions for rehearing were accordingly granted, and thereafter the testimony of a number of witnesses was taken.

Four witnesses were called on behalf of the claim-

ants.  Lawrence B. Whitfield, of the firm of Purdy & Whitfield, simply testified that his firm had rendered the funeral services for which one of the claims was filed.

Oliver Benham, brother of Willis H. Benham, testified that, shortly before the day of the accident, he had received from his brother, the deceased, a postal card reading as follows:

"I am working at Darrington, Wash. working for a fellow by the name of Ralph Mathews taking out alder and maple.  Why don't you drive up next Sat.  I might have something in sight for a couple of ambitious men.  If you do, you go north from Darrington about ten miles till you get to Wrinkle Creek, it's right on the power line.  There is a job here if you want it.  Come look it over."

The witness also testified that, after his brother's death, he called on Mathews and was told by the latter that he had paid the deceased wages for work done, and that a balance was still owing the deceased for logs recently cut but not yet sold; he further testified that, in response to an inquiry regarding industrial insurance, Mathews had stated that he did not carry such insurance, for the reason that it was unnecessary to do so "where he worked one or two men;" and that Mathews had also stated that at one time another man had worked with the deceased on the job, but had left before Benham sustained the injury.

Henry Benham, father of the deceased, merely identified his son's handwriting on the postal card above mentioned and testified that his son was buried by Purdy & Whitfield.

James C. Hayes, a wood buyer for the pulp company, testified concerning the arrangement under which Mathews purchased the stumpage and concerning the method by which payment therefor was made; he also stated that Mathews alone was known in the

transactions with the pulp company and with the two mills, and that no mention was ever made of Benham or of any partnership of which the latter purported to be a member.

The department called, as its only witness, R. H. Mathews, who was examined at length, on direct examination and on cross-examination, as to the details of his dealings with Benham. Mathews emphatically denied that he had ever told Oliver Benham that he had paid, or agreed to pay, wages to the deceased, and affirmed that he had definitely advised Oliver that his agreement with Willis H. Benham was strictly one of partnership. He also denied that he had made the statement attributed to him concerning industrial insurance. Mathews' affirmative testimony, which covered the entire period of his logging operations, was, in substance, as follows.

Prior to April 20, 1939, Mathews had acquired the stumpage rights and logging equipment and had been conducting the logging operation alone. On that day, after delivering a load of logs to one of the mills in Sedro Woolley, he by chance met Benham, who was also a hardwood logger. Benham was looking for work. After some general discussion, Mathews suggested that Benham accompany him to the woods and look the operation over, with the view of making some kind of business arrangement with him.

Arriving at the premises, the men continued their discussion, with the result that they entered into a definite partnership agreement, whereby the two men were to continue the operation together. As the logs were cut and sold, the stumpage price and all immediate expenses were to be paid first; from the balance, considered as net profits, Mathews was to receive twenty per cent for the use of the logging equipment furnished by him, and the rest of the money was to be equally

divided between them; that is to say, the division was to be on the basis of sixty per cent of the net profits to Mathews and forty per cent to Benham. Mathews was to have complete charge of the hauling and selling, according to the method that he had formerly pursued, and Benham was to have entire control of the cutting process, working when and where he saw fit, without any supervision by Mathews. Benham thoroughly understood the agreement and was satisfied with it.

One carload of logs was cut, delivered, and sold, and the proceeds of the sale, amounting to about ninety-four dollars, were allocated and divided according to the terms of the agreement.

The work then continued as before. During its progress, Benham, on one occasion, hired another man to help in the woods, but soon thereafter discharged him for inefficiency. The amount paid that individual was treated as an expense of the operation and deducted from the amount received from the sale of logs.

On Sunday, May 14, the two men were on the premises, but did no work in the forenoon. During the late afternoon, Mathews spent some time repairing the donkey engine, while Benham was engaged in washing his clothes. At about four-thirty in the afternoon, Mathews began cutting a few trees out of the logging roadway in order to facilitate the moving of a spar tree. At the same time, Benham was levelling some rough spots in the road. Benham suggested that they fell a few trees for subsequent yarding and hauling. Mathews was not inclined to do any more work that day but, at the insistence of Benham, complied with his request. It was in the course of this work that the accident occurred, resulting in Benham's injury and death.

Upon the evidence thus adduced, the joint board, and

subsequently the superior court, affirmed the order of the supervisor rejecting the claims.

In our discussion of the law bearing upon the case, we shall proceed upon the statutory rule, which has been repeatedly applied by this court, that, in all court proceedings under or pursuant to the workmen's compensation act, the decision of the department is to be deemed *prima facie* correct, and the burden of proof is upon the party attacking the decision. Rem. Rev. Stat., § 7697 [P. C. § 3488]; *Ames v. Department of Labor & Industries,* 193 Wash. 215, 74 P. (2d) 1027; *Cole v. Department of Labor & Industries,* 200 Wash. 296, 93 P. (2d) 413; *Radich v. Department of Labor & Industries,* 10 Wn. (2d) 107, 115 P. (2d) 1022, and cases therein cited.

The burden was therefore upon the claimant appellants to overcome by evidence the order rejecting the claims. To warrant a reversal of the order, the court must find, from the record, that appellants have sustained that burden; nor is that burden met by merely creating in the mind of the court a doubt as to the preponderance of the evidence, for, even in that situation, the decision of the department would still prevail. *Marney v. Industrial Ins. Department,* 98 Wash. 483, 167 Pac. 1085; *Pavlinovich v. Department of Labor & Industries,* 158 Wash. 374, 290 Pac. 876; *In re Larsen's Estate,* 191 Wash. 257, 71 P. (2d) 47; *Langford v. Department of Labor & Industries,* 195 Wash. 412, 81 P. (2d) 277.

Appellants rely heavily upon the rule declared by this court that, presumptively, a person employed to work on the premises of another and for that other's benefit is a servant. That presumption, however, will not stand in the face of substantial proof of a different relationship, such as is to be found in the present record.

■ ■ There was substantial evidence, comprising all the *direct* evidence, in this case, to the effect that the relationship between Mathews and Benham was that of partners or joint venturers, and not that of master and servant. Mathews testified emphatically that he advised Benham of his inability to hire anyone, and that consequently the parties voluntarily and understandingly entered into an agreement of partnership.

As stated in *Nicholson v. Kilbury*, 83 Wash. 196, 145 Pac. 189,

"There is no arbitrary rule by which it may be determined whether a partnership relation existed in a given instance or not. The existence of a partnership depends upon the intention of the parties. That intention must be ascertained from all of the facts and circumstances and the actions and conduct of the parties."

As further stated in that case,

"It is well settled that no one fact or circumstance will be taken as the conclusive test. Where, from all the competent evidence, it appears that the parties have entered into a business relation combining their property, labor, skill and experience, or some of these elements on the one side and some on the other, for the purpose of joint profits, a partnership will be deemed established. [Citing cases.]"

These statements are quoted approvingly in the recent case of *Constanti v. Barovic*, 199 Wash. 117, 90 P. (2d) 724.

In addition to the positive declaration by Mathews that the intention of the parties was to form a partnership and that their activities were conducted in pursuance of such a relation, we have a number of facts and circumstances, as detailed by Mathews, which harmonize perfectly with that interpretation of the agreement. The cost of the stumpage and all immediate expenses, which Mathews alone had theretofore been required to pay, were made the obligation of both parties,

to be paid out of the fruits of their joint efforts. Benham was to have complete charge of the operation carried on in the woods, working when and where he pleased, without any supervision or control by Mathews, while the latter, on the other hand, was to be in full charge of the hauling and selling phases of the enterprise. The parties thus combined their experience and skill to produce a common result, with equal profit to both. Benham helped to build the shack in which he was to live and also helped to improve the logging road, neither of which tasks would he have been required to perform if he were employed on a basis of three dollars and fifty cents per thousand feet of logs cut by him, as claimed by appellants. Benham hired a man to assist in the woods and subsequently discharged him; the wage earned by that individual was regarded as an expense of the operation and, though the amount was initially paid by Mathews, it was deducted from the money received from the sale of the logs. Benham also wrote to his brother offering him a job on the premises, thus indicating Benham's authority in connection with the operation. And, finally, as stated before, the net profits of the venture, after the allowance of twenty per cent to Mathews for the use of the logging equipment, were divided equally between the two men.

With respect to the net profits factor, it is true, as appellants contend, and as the cases generally hold, that the mere sharing of the net proceeds of a business venture with an employee, without more, does not of itself convert the relationship between the parties concerned into a partnership. There must be a community of interest in, or a joint ownership of, the business itself, accompanied by a joint right of control of its affairs. However, when the various factors above recited are all considered together, they are in com-

plete harmony with the establishment of a partnership and, in our opinion, are more consistent with that relationship than with that of master and servant.

Appellants lay stress upon the statement allegedly made by Mathews to Oliver Benham, after the death of Willis H. Benham, to the effect that the latter had been paid wages. That statement, it will be remembered however, was categorically denied by Mathews, thus presenting a question of credibility which the joint board was privileged to resolve. It is also to be noted that the alleged statement is at complete variance with the detailed facts as narrated by Mathews. If Mathews is to be believed, we must conclude, as did the trial court, that the preponderance of the evidence did not establish that Benham was a workman employed by Mathews, but, rather, that the two men were partners engaged in a common venture at the time of the accident here involved.

Recognizing the force and weight of Mathews' testimony, if considered admissible, appellants contend, under one of their assignments of error, that his testimony was incompetent and therefore inadmissible. Their contention is rested upon Rem. Rev. Stat., § 1211 [P. C. § 7722], which provides, in part,

" . . . that in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen (14) years, then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased or insane person, or by any such minor under the age of fourteen (14) years: . . ."

We may at once eliminate consideration of that provision in the statute with reference to transactions had

with, or statements made by, an insane person or minor under the prescribed age, for, in this instance, Mathews had no transaction or conversation with either a person of unsound mind or with any of the minors on whose behalf one of the claims herein was filed.

Appellants, proceeding on the assumption that Mathews was an *employer* of Benham, contend that Mathews was a party in interest, for the reason that, under our decisions, he could, as such employer, have appealed from an order of the joint board allowing the claims. But even if we were to adopt appellants' entire assumption on this point, we would still be faced with that portion of the section just quoted, dealing with adverse parties. It is appellants' position that, as to Mathews, the guardian and the minor children of the deceased are adverse parties here suing "as deriving right or title by, through or from" the deceased, Willis H. Benham, and that therefore Mathews was incompetent to testify as to any transaction had by him with, or any statement made to him by, the deceased. This presents a question as to the nature or basis of the right of the *widow, children, or dependents* of a deceased workman to recover under the provisions of the workmen's compensation act.

It is now settled in this state that the right to proceed under that act is a statutory, not a common-law, right. *Denning v. Quist,* 172 Wash. 83, 19 P. (2d) 656; *Mattson v. Department of Labor & Industries,* 176 Wash. 345, 29 P. (2d) 675. It has also been definitely determined by this court that claims for compensation asserted by the beneficiaries or dependents mentioned in the workmen's compensation act are distinct from the claim of the injured workman himself; that claims of such beneficiaries *arise* only after the death of the workman; and that they are based on a *new and original right* arising after such death.

In *Beels v. Department of Labor & Industries,* 178 Wash. 301, 34 P. (2d) 917, the department sought to defeat a widow's claim for compensation on the ground that she had not filed her claim within one year from the date on which the injury to her husband had occurred. Holding that the claim was timely if filed within one year from the time of the *death* of her husband, the court said:

"Under Rem. Rev. Stat., §§ 7679 and 7686, by authority of which respondent's claim, as deceased's widow, for compensation was made, the widow could not be deemed, during her husband's life, a party in interest to any proceeding by him for enforcement of any claim for compensation. Her rights accrued the instant her husband died. Her application for compensation was filed within one year after the day upon which her rights accrued, hence the claim was timely filed. Her husband's failure to make application for compensation within one year after the day upon which the injury occurred did not beneficially or detrimentally affect her claim, which was based on a *new original right arising from his death. Curtis v. Slater Construction Co.,* 202 Mich. 673, 168 N. W. 958." (Italics ours.)

To the same effect, see *McFarland v. Department of Labor & Industries,* 188 Wash. 357, 366, 62 P. (2d) 714, 718, and *Devlin v. Department of Labor & Industries,* 194 Wash. 549, 560, 78 P. (2d) 952, 958.

The case of *Ek v. Department of Labor & Industries,* 181 Wash. 91, 41 P. (2d) 1097, upon which appellants rely, is not apposite upon the point now under consideration. That case did not pass upon the question of the widow's *right to file a claim in her own behalf,* but simply held that, where an injured workman files a claim in his lifetime and the claim is rejected by the department on the ground that he was not within the act, such rejection is a final judgment and, when the time for appeal has expired, becomes a complete and final

adjudication, binding not only on the claimant workman, but also upon all persons who might thereafter claim by, through, or under him. In other words, an adjudication as to the existence or absence of a fact which is essential to the bringing of a claim for injury within the workmen's compensation act binds not only the workman himself, but also those who seek compensation as his beneficiaries or dependents.

Regardless, then, of whether Mathews was a partner or an employer of Benham, his testimony was not incompetent under Rem. Rev. Stat., § 1211, because the right, if any, of the guardian or minor children to receive compensation would not be derived by, through, or from the deceased, nor as compensation for the deceased's *injury*, but would be a new, original right in them arising from and by reason of the injured workman's *death*.

Appellants' remaining assignment of error is directed against a ruling by the trial court excluding, as incompetent evidence, the postal card, referred to above, written by the deceased to his brother Oliver a short time before his death. The card had been admitted without objection by the department at the rehearing before the joint board. However, when appellants reoffered it in evidence at the trial before the superior court, the department objected to its admission, and it was thereupon excluded.

Even assuming, for the sake of argument, that the postal card was admissible, its exclusion has not operated to appellants' prejudice, because the entire matter is now before us for trial *de novo*, and we have considered the complete record as made before both the supervisor and the joint board. With reference to the postal card, it is to be noted that although Mathews mailed it, he testified that he never read it, and hence he was not bound by its statements. Moreover, the

contents of the card, when read in their entirety, are not inconsistent with a partnership relation between Mathews and Benham. In any event, the card was not sufficient, in our opinion, to shift the weight of the evidence in appellants' favor.

The judgment is affirmed.

ROBINSON, C. J., MAIN, MILLARD, and DRIVER, JJ., concur.

[1]Reported in 120 P. (2d) 845.