[No. 29039. Department Two. July 9, 1943.]

THE STATE OF WASHINGTON, *Respondent*, v.
A. J. BARTLEY *et al.*, *Appellants.*[1]

*Fred M. Bond,* for appellants.

*The Attorney General* and *Rudolph Naccarato, Assistant,* for respondent.

GRADY, J.—Prior to April 30, 1940, A. J. Bartley had been engaged in the business of logging off lands owned by others and using his own machinery and equipment. He contracted to log two tracts of timber lands. He anticipated the possibility of labor difficulties, and,

[1]Reported in 139 P. (2d) 638.

also finding the payment of industrial insurance premiums to the state burdensome, conceived the plan of entering into an arrangement with workmen whereby they would be paid the going wage for their particular kind or class of work and, under certain circumstances, share in any profits which might be made. It was believed by Bartley that, by such an arrangement, the union labor problem, with attendant strikes and other labor difficulties, could be avoided, the workmen would be more interested in the work and its success, and the legal result would follow that the workmen would not be affected by the workmen's compensation act.

To carry out this plan, a verbal agreement was had on April 30, 1940, between Bartley and certain workmen for the logging of one of the tracts, and a written agreement was made in March, 1941, relative to the other tract. The two contracts were so similar in their terms that, for the purpose of our decision, they may be treated together, though the workmen who operated under each contract were substantially different.

Before the completion of the work covered by the written contract, the state brought suit against A. J. Bartley and wife and A. J. Bartley & Company to recover unpaid industrial insurance premiums and penalties, upon the theory that the relationship between Bartley and the workmen engaged in the logging operations was that of employer and employees. The defense set up by the defendants was that defendant A. J. Bartley & Company was a partnership composed of A. J. Bartley and the various workmen involved, hence no such premiums were owing to the state.

The case was tried before the court, and it was found and adjudged that the workmen were the employees of Bartley, and a judgment was entered against him and his wife, both as a community and under the firm name of A. J. Bartley & Company, for the amount of the un-

paid premiums and penalties, from which an appeal has been taken by them.

The contracts provided that the appellant Bartley would contribute his logging equipment and the workmen their labor in a partnership enterprise, and conduct the logging operations under the name of A. J. Bartley & Company. No working capital was provided, but this was later derived from money borrowed by appellants on their own credit and by the sale of logs cut under the two contracts. Appellant Bartley was to receive the sum of three hundred dollars a month as rental for his equipment, each workman was to be assigned, by mutual agreement, to the kind or class of work for which he was best fitted, and the workmen were to be paid the reasonable and prevailing wage each month. The cost of maintaining the equipment and replacements, the rental, a reasonable amount to Bartley for his services as manager, and the compensation to be paid to the workmen, were to be paid first, and the balance of money on hand, if any, was then to be divided equally. Under the verbal agreement, the division of profits was to be when the job was finished, but it is to be inferred from the written agreement that this was to be done monthly. If at any time any of the workmen desired to withdraw from the enterprise, he could do so, but this was not to interfere with the contracts being continued by the others. When there was a withdrawal, such person was to be paid his earned wages and, by the terms of the written contract, his share of the then accrued net profits, if any.

The foregoing is the substance of the written agreement made in March, 1941, but the testimony shows that there were other contractual terms of the verbal agreement of 1940 carried forward into the former, though not set forth therein. The course of dealing throughout also indicates that all parties assumed, and took for granted, the existence of the additional con-

tractual terms of the oral agreement and, along with these, we shall refer to some of the course of dealing which we consider had an important bearing on the true relationship of the parties.

It was agreed that each workman would secure accident insurance from some insurer of his own choosing, he to pay one half of the premium and the other one half to be paid out of the funds of the enterprise. Appellant Bartley reserved the right to manage the work and to hire and discharge temporary employees. He kept the bank account in his own name. Mrs. Bartley kept the books and signed the checks, and the general conduct of the business affairs was substantially the same as when appellant Bartley operated prior to April 30, 1940. When the verbal agreement was made, some of the former employees of Bartley's were parties to it, along with additional workmen. They signed and filed a business certificate to comply with Rem. Rev. Stat., § 9976 [P. C. § 4356], but, as some of them dropped out and their successors came in, no certificates containing the new names were filed.

When the March, 1941, written contract was made, though it consisted mostly of different parties from those to the verbal one, no certificate was filed. There was no agreement that the workmen should share the losses, though this was casually mentioned to one of the workmen when he signed the written agreement. The workmen seemed to understand that, if any of the equipment had to be repaired or replaced, the cost would be paid out of "company" funds; but if there were not sufficient funds therefor, none of them would be obliged to contribute any of their own funds. Appellant Bartley was to act as manager, but only with reference to working operations. The workmen had no voice in the business affairs of the enterprise and never claimed any right of ownership therein or joint control thereof with Bartley, and there was no community of interest therein, nor was there that mutual

agency between the parties that usually exists between copartners.

As stated, the personnel of the enterprise changed and fluctuated so that, when the agreement of March, 1941, was made, many new parties came into the enterprise, and a number dropped out. At the time of the trial, none of the first group of workmen were then engaged in the enterprise, and, of the second group, but three remained. No business meetings were ever held, and no business affairs were discussed with the workmen, except, in some instances, the placing of workmen where they could best serve. Bartley stated he could not stop the workmen from quitting, but he could prevent any workman from coming into the enterprise. There was no accounting made by appellants at any time. When a workman dropped out, a settlement was made with him, and he was paid. Reports were made to the social security department, and the required deductions made from the wages of the workmen remitted. Some of the workmen had been injured, but they relied on their own insurance. In one instance, a workman had made claim to the industrial insurance department, but Bartley refused to be a party to the claim as employer. He refused to pay insurance premiums to the department.

We have outlined in some detail the terms of the two contracts between the appellant Bartley and the workmen and their course of dealing, as, in determining whether the relationship between them was that of copartners or of employer and employees, all these factors must be considered.

In determining, in a given case, whether a partnership exists, there may be disclosed by the evidence many elements pointing one way or the other, no one of which may be said to be conclusive. The fact that the parties to a business arrangement may call it a partnership does not make it such. Many times form

must give way to substance. There is no fixed rule by which it may be determined whether, in a particular case, there is a partnership relation. It all depends upon the intention of the parties, and such intent must be ascertained from the agreement of the parties, their acts and conduct, and all the facts and circumstances of the case. The cases and text books are in substantial accord as to what elements constitute a partnership. Where differences appear, they are usually in the application of the rules determinative of a partnership, and, as each case must depend to a great extent for a decision upon its own factual situation, a citation here of the numerous authorities to be found would be of no value. The general rules are set forth in *Nicholson v. Kilbury,* 83 Wash. 196, 145 Pac. 189; *Purdy & Whitfield v. Department of Labor & Industries,* 12 Wn. (2d) 131, 120 P. (2d) 858; *Stipcich v. Marinovich,* 13 Wn. (2d) 155, 124 P. (2d) 215; 40 Am. Jur. 145, §§ 32-51; 137 A. L. R. (note) 6.

We cite these cases not as a basis for our decision, because of the divergent factual situations therein, but as declarations of the principles which must guide us in our approach to this case. While there are a number of factors here pointing towards a partnership relationship, there are others which, to our minds, are of such cogency as to overcome the others and bring us to the conclusion that the arrangement throughout between Bartley and the other parties to the agreements created the relationship of employer and employees.

Bartley was the owner of the logging contracts. He owned all the machinery and equipment used. He furnished the capital, and all the money used was either that which he borrowed on his own credit or was derived from the contracts. In reality, it was his own money, out of which he paid all the expenses of operation, the upkeep, and the replacement of the equipment. The other parties incurred no personal

liability and would have shared none of the losses had there been any. They had no right of management or control in the business end of the enterprise. There was no community of interest in, or any joint ownership of, the business itself. The personnel of the enterprise fluctuated the same as does any logging crew. The workmen took no interest in the business affairs. Bartley was obligated to pay the usual or going rate of compensation for their labor. The division of profits was but additional compensation for their services, and was a device to induce them to remain in his employ.

We think it is fair to infer that the parties did believe that, if they held themselves out as partners, they would avoid labor union interference, as it does not seem that the workmen were required to be members of a labor union. If the arrangement were a partnership, they would also avoid paying industrial insurance premiums to the state. All of this had a bearing on the intention of the parties really to create a partnership. The trial judge, who had the parties before him and had an opportunity to observe their reactions as their stories unfolded, was of the opinion that there was no intention on their part to form a partnership, and correctly, we think, concluded that the workmen were employees of appellant Bartley.

The judgment is affirmed.

SIMPSON, C. J., BEALS, BLAKE, and ROBINSON, JJ., concur.