[No. 215-40910-1.    Division One.    May 25, 1970.]
Panel 1

ELI CORAK, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

*Slade Gorton, Attorney General,* and *Gomer L. Cannon, Assistant,* for appellant.

*H. Frank Stubbs,* for respondent.

SWANSON, J.—Eli Corak first sustained an industrial injury to his low back in January of 1952. For this he received a permanent partial disability award of 15 per cent of the maximum allowed for unspecified disabilities. He continued working as a laborer doing concrete work until July 12,

1965, when he reinjured his low back. The Department of Labor and Industries (department) allowed his claim and granted a permanent partial disability award of 10 per cent of the maximum allowed for unspecified disabilities. Corak appealed this award to the Board of Industrial Insurance Appeals (board). The board increased Corak's award to 40 per cent of the maximum allowed for unspecified disabilities, less the monetary amount paid to Corak for his 1952 injury.[1] Corak appealed this award to the superior court. The department also appealed but only as to the legal question[2] of the application of RCW 51.32.120 instead of RCW 51.32.080 (3).[3]

The trial court combined the disabilities resulting from both the 1965 and the 1952 injuries, as did the board, but increased the disability award to 50 per cent of the maximum allowed for unspecified disabilities, and deducted the monetary amount paid to the claimant for his 1952 injuries. The department appeals from the court's failure to determine the percentage of disability attributable to the second injury only and base its increased award thereon, rather than to combine the disabilities from both injuries and deduct from the total the amount of the previously received monetary award.

Stated in another way, the department's three assignments of error all involve this issue: Whether, under the claim filed for his 1965 injury, the respondent's disability

---

[1] The board's findings do not segregate the 1952 injury from the 1965 injury. Finding 4 states in part:

On or about November 30, 1966, as a result of both injuries, the permanent disability was equal to 40% of the maximum allowable for unspecified disabilities, . . . .

[2] RCW 51.52.110 prevents the department appealing from decisions of the board to the superior court on factual issues, *i.e.*, percentage of disability.

[3] The board's decision explained its application of RCW 51.32.120:

"The claimant has sustained two industrial injuries; he has previously been the recipient of a lump sum payment for permanent disability caused by the first injury, and we are of the opinion that the claimant should be reimbursed 'with regard to the combined effect of his injuries and his past receipt of money,' as provided in RCW 51.32.120."

and the compensation payable therefor should be determined by the application of RCW 51.32.120 or RCW 51.32.080(3). RCW 51.32.120 is referred to herein as the "combined effects" section, which both the board and the trial court applied to determine the award in this case, and reads as follows:

> Should a further accident occur to a workman who has been previously the recipient of a lump sum payment under this title, his future compensation shall be adjusted according to the other provisions of this chapter and with regard to the combined effect of his injuries and his past receipt of money under this title.[4]

RCW 51.32.080(3), which the department contends should be used to determine Corak's disability and compensation, is referred to herein as the "increased disability" section, and it says:

> Should a workman receive an injury to a member or part of his body already, from whatever cause, permanently partially disabled, resulting in the amputation thereof or in an aggravation or increase in such permanent partial disability but not resulting in the permanent total disability of such workman, his compensation for such partial disability shall be adjudged with regard to the previous disability of the injured member or part and the degree or extent of the aggravation or increase of disability thereof.

Respondent Corak argues that RCW 51.32.120, the "combined effects" section, was intended to apply to a situation such as this where the workman had a previous industrial injury resulting in a lump sum payment, and then sus-

---

[4]RCW 51.32.120 was originally enacted in 1911 when the Industrial Insurance Act contained no schedule of specific awards for specified disabilities, as it presently does. However, it did provide that awards for permanent partial disability should not exceed $1,500. In 1917, it was amended to include a list of specified permanent partial disabilities with a schedule of specified compensation for each. Again, in 1927, the legislature amended the act to substantially its present form by eliminating the reference to temporary disability. At that time, the legislature added a new paragraph following the "combined effects" paragraph which is substantially the same provision as the present RCW 51.32.080(3), the "increased disability" section.

tained a further accident, so that he is entitled to additional compensation. The "increased disability" section, which the department contends should be applied, respondent Corak claims, is limited to a situation where a workman has an existing permanent partial disability, from whatever cause (but nonindustrial), and then has an injury resulting in an increase or aggravation of such preexisting permanent partial disability. Respondent says this is the distinction between the two sections of the statute which leaves room for the application of both. If the "combined effects" section is applied to a situation such as this, the respondent states that the workman would be compensated for the total percentage of disability he has following the second injury, less the monetary sum he has already been paid. If the "increased disability" section is given the interpretation urged by respondent a workman with a preexisting disability from other causes who has not incurred a previous industrial injury with lump sum award under the Industrial Insurance Act, would receive only that amount which results specifically from the second injury.

The department, the appellant herein, challenges respondent's interpretation of the two sections of the statute and says the plain terms of the "increased disability" section, RCW 51.32.080(3), require its application, and the failure to apply it would produce results inconsistent with other compensation provisions of the Act. Appellant contends that, by its terms, this section of the statute applies where injury occurs to a part of the body "already, from whatever cause, permanently partially disabled, . . ." Appellant says that once Corak received an injury to part of his body already permanently partially disabled, namely, his low back, the test for determining compensation payable is to determine the increase of the disability of the part of the body caused by the injury in question.

The "combined effects" section was originally enacted in 1911, but its application has been considered by our Supreme Court on only five occasions. It was first discussed in *Biglan v. Industrial Ins. Comm'n,* 108 Wash. 8, 182 P. 934

(1919). The court construed the "combined effects" section to limit the compensation payable for specified disabilities incurred in separate injuries. A workman sustained an eye injury in 1913 for which he was paid $625. Three years later, he sustained an arm injury for which he first was awarded $1,250. The court reduced the award to $875, so that the maximum allowable for a permanent partial disability would not be exceeded.

It was next considered in *Klippert v. Industrial Ins. Dep't,* 114 Wash. 525, 196 P. 17 (1921), where a workman suffered in his first injury the loss of an eye by enucleation, and in his second injury the loss of an arm at the shoulder. Both were specified disabilities, so the "combined effects" section was held inapplicable to limit compensation. *Biglan* was distinguished, because the legislature had included in the act a schedule of specified disabilities after *Biglan* was decided.[5]

The next three cases involving the application of the "combined effects" section, *Harrington v. Department of Labor & Indus.,* 9 Wn.2d 1, 113 P.2d 518 (1941); *Sorenson v. Department of Labor & Indus.,* 12 Wn.2d 355, 121 P.2d 978 (1942); and *Sorenson v. Department of Labor & Indus.,* 19 Wn.2d 571, 143 P.2d 844 (1943), all involved workmen who were classified as permanently totally disabled, had returned to work, and then sustained further injuries.

In *Harrington,* the court applied the "combined effects" section to preclude a workman classified as permanently totally disabled, who had received full compensation by a lump sum award for his first injury, from receiving any further compensation for the second injury.

In the first *Sorenson* case, 12 Wn.2d 355, the workman, though classified and compensated by a lump sum payment

[5]The first opportunity for the Supreme Court to discuss both sections of the statute arose in *Rehberger v. Department of Labor & Indus.,* 154 Wash. 659, 283 P. 185 (1929). It was decided in 1929, 2 years after the "increased disability" section was added to the statute, and involves successive injuries. But the court's opinion contains no reference to either section under consideration here, or to either of the previously discussed cases, *Biglan* and *Klippert.*

as totally permanently disabled, did not receive full compensation for such injury.[6] The court held that since the workman was not *fully* compensated for his first injury, the lump sum payment was void, so the "combined effects" section entitled him to the compensation prescribed by the act, less the amount which he had already received as a lump sum settlement.

In the second *Sorenson* case, 19 Wn.2d 571, the "combined effects" section was applied, as in *Harrington,* to preclude compensation for the second injury, since the workman had been fully compensated to the maximum allowable for his first injury. No subsequent cases involving the application of the "combined effects" section have been cited to us, nor has our research revealed any.

It is important to note that the "increased disability" section was originally enacted in 1927 as a paragraph immediately following the paragraph containing the combined effects provisions. There have been no substantial changes in this section of the statute since its enactment. By its terms, the "increased disability" section of the statute differs from the "combined effects" section in that the former does not apply to situations where there is no prior disability involving the same member or part of the body. It differs also in that its application is specifically limited to permanent *partial* disability situations involving aggravation or increase in such permanent partial disability. The "combined effects" section is not so limited. Also, the "increased disability" section applies only to cases in which the workman is already, in fact, permanently partially disabled within the meaning of the workman's compensation act, but it does not apply to determine the disability attributable solely to an injury where the trauma activated a latent congenital weakness not previously disabling. *Miller v. Department of Labor & Indus.,* 200 Wash. 674, 94 P.2d 764 (1939).

---

[6]The lump sum settlement paid was $2,795.90 which was 50 per cent of the value of the pension reserve at the time, and less than the $4,000 maximum for such settlements.

The "increased disability" section was applied in *Beyer v. Department of Labor & Indus.*, 17 Wn.2d 29, 31, 134 P.2d 948 (1943), to require a workman's previous disability resulting from the loss of the sight of his eye to be considered in fixing his compensation for a subsequent injury to the same eye requiring its removal. In *Beyer*, the department awarded for this second injury the difference between the specified amount for loss of the sight of one eye and the specified amount for the loss of an eye by enucleation. The trial court reversed and awarded the workman $1,440, which was the entire amount specified for the loss of an eye by enucleation. On appeal, the Supreme Court reversed the trial court and held that the department had correctly determined the award by applying the "increased disability" section, and said:

> This, we think, applies to the situation before us. In July, 1941, respondent received an injury to his eye. He had already been permanently partially disabled in 1935, and this second injury resulted in the removal of the eye, but not in his permanent total disability. The statute appears to direct the department to fix his compensation for the second injury with regard to the previous disability. It would seem that, if the department had allowed the claimant $1,440, it would have completely disregarded that direction.

The rationale of *Beyer* was followed in *Allen v. Department of Labor & Indus.*, 48 Wn.2d 317, 318, 293 P.2d 391 (1956), which construed the "increased disability" section to require the extent of permanent partial disability to be determined on the basis of the percentage of the disability attributable to the injury in question. The court stated:

> While Dr. Grieve's testimony is sufficient to sustain a finding that respondent was suffering from a thirty-percent disability in September, 1953, there is no testimony in the record upon which more than ten per cent of that disability is attributable to the injury in question. [Quotation from RCW 51.32.080(5) omitted.]
> The statute in question requires the reversal of the trial court for the reason that the record does not sustain

a finding of thirty-per-cent disability *which can be attributed to the injury in question.*

*Accord, Enevold v. Department of Labor & Indus.*, 51 Wn.2d 648, 320 P.2d 1096 (1958). *Voshalo v. Department of Labor & Indus.*, 75 Wn.2d 43, 449 P.2d 95 (1968).

■ Respondent Corak contends that these cases are not controlling, because none of them involves a preexisting disability resulting from an industrial accident involving a lump sum payment. This argument may be answered by again quoting the "increased disability" section of the statute which makes it applicable to the injuries to a part of the body "receive[d] . . . already, from *whatever cause*, . . ." (Italics ours.) The department argues that when the legislature used the phrase, "from whatever cause," it could not have meant only from nonindustrial causes, for this does violence to the plain meaning of the language used in the statute. We agree. If the legislature intended this narrow, restricted meaning, it chose in the phrase, "from whatever cause," the broadest possible language in order to express it. There is no reason to believe that the phrase was intended to mean anything other than what it states. It must be remembered, also, that this section was enacted after the "combined effects" section and after *Biglan* and *Klippert* interpreted that section.

The appellant department next contends that if the "combined effects" section is controlling, the respondent Corak would be retroactively compensated for the disability resulting from his 1952 injury because of the higher rate of compensation in effect under the 1965 schedule of awards. When Corak's claim was closed in 1956 with an award of 15 per cent of the maximum allowed for unspecified disabilities, the schedule of awards in effect at that time provided for a maximum for unspecified disabilities of $6,000. The schedule applicable to the 1965 injury provides the maximum for unspecified disabilities of $12,750. The net effect of directing the respondent Corak to be compensated for the disability due to his 1952 injury, pursuant to the 1965 compensation schedule, is a retroactive application of

the 1965 schedule of awards and results in doubling the amount of compensation for the disability resulting from the 1952 injury.

A statute is deemed to operate prospectively unless the legislature clearly manifests its intent that it operate retroactively. *State v. Ladiges,* 63 Wn.2d 230, 386 P.2d 416 (1963); *Layton v. Home Indem. Co.,* 9 Wn.2d 25, 113 P.2d 538 (1941). *See Yellam v. Woerner,* 77 W.D.2d 611, 464 P.2d 947 (1970). It must be remembered that the workman's compensation act, when amended, increasing the awards for disabilities, must be construed in the light of disabilities resulting from injuries sustained after the effective date of each amendment. See *Bodine v. Department of Labor & Indus.,* 29 Wn.2d 879, 190 P.2d 89 (1948); *Ashenbrenner v. Department of Labor & Indus.,* 62 Wn.2d 22, 380 P.2d 730 (1963). *Franks v. Department of Labor & Indus.,* 35 Wn.2d 763, 215 P.2d 416 (1950), requires that workmen sustaining injuries at the same time receive the same compensation for equal disabilities. To compensate Corak by deducting only the monetary sum received in 1952 from an award based on the combined disabilities payable pursuant to the 1965 schedule, would compensate Corak for his 1952 injury on the basis of the 1965 schedule rather than the 1952 schedule. Such an interpretation would conflict with the provisions of RCW 51.32.160[7] which provides for readjustment of compensation in cases involving aggravation of disability. When aggravation resulting in increased disability is established, the compensation payable is fixed in ac-

---

[7]"If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated, in any case the director, through and by means of the division of industrial insurance, may, upon the application of the beneficiary, made within five years after the establishment or termination of such compensation, or upon his own motion, readjust for further application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment.

"No act done or ordered to be done by the director, or the department prior to the signing and filing in the matter of a written order for such readjustment shall be ground for such readjustment."

cordance with the provisions in effect at the time of the injury. *Ashenbrenner v. Department of Labor & Indus., supra.*

Sound reason and uniformity require that there be a segregation, so that the workman is compensated for the disability attributable to the injury in question alone.[8] To accomplish this, it is necessary to make a factual determination as to the percentage of permanent partial disability Corak sustained which is attributable soley to the 1965 injury. The medical evidence most favorable to respondent Corak was given by his witness, Dr. Thomas, who indicated on direct examination that, in his opinion, Corak's disability amounted to 65 per cent of the unspecified, but he did not attempt to apportion the disability due to each of the injuries. Dr. Thomas' testimony is sufficient to sustain the trial court's finding that respondent was suffering from a 50 per cent disability. There is no finding apportioning the disability due to each of the injuries. However, Corak was awarded 15 per cent of the maximum allowed for unspecified disabilities for his 1952 injury, and such order was not appealed from, and is res judicata. The simple mathematics of the situation dictate an award of 35 per cent of the maximum allowed for unspecified disabilities.

The judgment is modified in accordance with the opinion expressed herein, and the cause remanded to the trial court to modify its judgment and findings, and to direct the department to pay the respondent 35 per cent of the maximum allowed for unspecified disabilities, less 10 per cent previously paid under the claim.

JAMES, C. J., and FARRIS, J., concur.

---

[8]The Board of Industrial Insurance Appeals, in its decision, stated that the primary issue in the case is the determination of the disability due to Corak's 1965 injury:

> The primary issue presented by this appeal is the extent of the claimant's disability on November 30, 1966, attributable to an injury which occurred on July 12, 1965.