[No. 60798-2.    En Banc.    November 17, 1994.]

WILLIAM KILPATRICK, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *Respondent*.

RONALD C. HENDRICKS, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *Respondent*.

LOWELL LEE, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Levinson, Friedman, Vhugen, Duggan & Bland,* by *William D. Hochberg* and *Joel J. Delman,* for appellants.

*Christine O. Gregoire, Attorney General,* and *John R. Wasberg* and *Michael Davis-Hall, Assistants,* for respondent.

JOHNSON, J. — In each of the three consolidated cases, the widow of a deceased worker challenges the calculation of surviving spouse's benefits under Washington's workers' compensation act, the Industrial Insurance Act. RCW Title 51.

The Superior Court affirmed the Department of Labor and Industries (Department) and the Board of Industrial Insurance Appeals (Board) in the calculation of benefits for

each surviving spouse at the rate schedule in effect when her husband first manifested an asbestos-related disease. The widows contend the benefits should be paid at the rate in effect (1) at the death of their husbands, or (2) at the manifestation of the specific asbestos-related condition which caused the death.

We reverse, and hold survivor's benefits are determined according to the rate schedule in effect at the date of manifestation of the particular asbestos-related disease which caused the worker's death.

## FACTS

The pertinent facts of the three cases are similar and not contested by the parties. Each worker suffered occupationally related asbestos exposure and filed a claim for an asbestos-related condition prior to 1988. In 1988, the Legislature amended the statutes relating to the maximum monthly payments available under the Industrial Insurance Act, RCW 51.32.050 and RCW 51.32.060.[1] The amendments increased the monthly benefit from 75 percent to 100 percent of the average worker's salary. After the effective date of the amendments, July 1, 1988, each worker manifested and quickly died from a second asbestos-related disease.

## Kilpatrick

Mr. Kilpatrick manifested asbestos-related lung disease on January 19, 1983, as a result of work-related asbestos exposure. The asbestos exposure also resulted in a diagnosis of intraabdominal mesothelioma in November 1988. Mr. Kilpatrick died on December 29, 1988.

---

[1]As a result of the 1988 amendments, RCW 51.32.050(2)(d) read: "In no event shall the monthly payments provided in subsection (2) of this section exceed one hundred percent of the average monthly wage in the state as computed under RCW 51.08.018". Likewise, amended RCW 51.32.060(5) read: "In no event shall the monthly payments provided in this section exceed one hundred percent of the average monthly wage in the state as computed under the provisions of RCW 51.08.018, except that this limitation shall not apply to the payments provided for in subsection (3) of this section". Laws of 1988, ch. 161, §§ 2, 1. Previously, each of the subsections listed "seventy five percent" as the maximum monthly rate.

Both statutes were subsequently amended in 1993; however, the 1993 amendments do not affect the outcome in this case.

On May 17, 1989, Mrs. Kilpatrick filed her claim for survivor's benefits. In calculating her benefits, the Department used the 75 percent rate in effect when Mr. Kilpatrick manifested asbestos-related lung disease, rather than the 100 percent rate in effect at the manifestation of mesothelioma. Mrs. Kilpatrick appealed to the Board, which affirmed the Department. She then appealed to superior court, which granted summary judgment for the Department. She appealed to the Court of Appeals, Division One, and the case was transferred to this court.

## Hendricks

Mr. Hendricks first submitted a claim for asbestosis on August 4, 1986. In April 1989, Mr. Hendricks was diagnosed with lung cancer. Mr. Hendricks underwent surgery to remove the cancerous tumor from his lung. On April 15, 1989, following lung surgery, Mr. Hendricks died of a heart attack.

The Department received Mrs. Hendricks' claim for survivor's benefits on May 3, 1989. Mr. Hendricks had been aware of both the asbestosis and asbestos-related pleural disease by June 1987. Therefore, June 1987 was used by the Department as the date of manifestation for the purpose of calculating benefits. Mrs. Hendricks appealed the calculation of benefits to the Board, which affirmed the Department. She then appealed to superior court, which granted summary judgment for the Department. She appealed to Division One, and the case was consolidated and transferred to this court.

## Lee

Mr. Lee first filed a claim for asbestosis on June 29, 1979. On August 31, 1983, the Department closed Mr. Lee's claim with an award for permanent partial respiratory impairment.

In July 1990, Mr. Lee was diagnosed with lung cancer. He had continued to work full time as an insulator up until the cancer diagnosis. Mr. Lee filed an application to reopen his claim on October 1, 1990. On November 19, 1990, the

Department reopened the original claim, classifying the new claim for lung cancer as an aggravation of the asbestosis. In this way, the claims were consolidated, using the date of manifestation of the asbestosis. Mr. Lee then filed a new claim for the same lung cancer. The lung cancer claim was denied as a separate claim. Mr. Lee protested this decision. The Department reaffirmed its position, and Mr. Lee appealed the reaffirming order to the Board on February 13, 1991.

Mr. Lee died on May 12, 1991, and Mrs. Lee filed for survivor's benefits. The Department calculated the benefits according to the rate in effect on June 14, 1983, when the original asbestosis manifested itself. Mrs. Lee appealed.

The Board consolidated Mrs. Lee's appeals of the reaffirming order and the calculation of benefits. The Board affirmed the Department on both orders, relying in part on its decision in *In re Kilpatrick*, Bd. of Indus. Ins. Appeals Dec. 89 5200 (1991). Further, the Board made findings of fact that Mr. Lee suffered from asbestosis and small cell carcinoma of the lung from the same exposure to asbestos, and that the lung cancer was an aggravation of his asbestos-related disease covered by the original claim. Mrs. Lee appealed the Board's decision to superior court. The court granted summary judgment for the Department. Mrs. Lee appealed to the Court of Appeals, Division Two, and the case was transferred to this court.

ANALYSIS

The claimants contend they are entitled to collect benefits at the 100 percent level instituted by the 1988 amendments based on two arguments.[2] First, they argue the claim for survivor's benefits does not accrue until the death of the

---

[2]The claimants make an additional argument, asserting the date the claim for survivor's benefits was filed should control which benefit schedule applies to their claims. However, there is no support for this position and the amendments clearly state the date a claim is filed is not relevant to the determination of benefits. RCW 51.32.180 provides: "for claims filed on or after July 1, 1988, the rate of compensation for occupational diseases shall be established as of the date the disease requires medical treatment or becomes totally or partially disabling, whichever occurs first, and *without regard to the date of the contraction of the disease or the date of filing the claim*". (Italics ours.)

worker. Therefore, they argue, it should be treated as a separate claim brought after the effective date of the 1988 increase in benefits. Under this approach, the widows would be entitled to the schedule of benefits in effect at the death of their husbands.

Second, the claimants challenge the Department's handling of the final disease as an aggravation or continuation of the original asbestos-related claim, using the original manifestation date to determine benefits. They argue the relevant date of manifestation of an occupational disease is the date each worker contracted the specific asbestos-related disease which caused the death. This approach would also entitle the claimants to the 100 percent compensation rate, which was in effect at the manifestation of the final disease.

In addition, the claimants seek attorney fees on appeal under RCW 51.52.130.

We hold that for purposes of determining the applicable benefit schedule, the widows' claims are not independent of their husbands' claims, and thus do not use a different date of injury when calculating their survivor's benefits. However, we hold the widows are entitled to the 100 percent benefit level instituted by the 1988 amendments on the basis that the date of manifestation of the specific disease that caused death is the relevant manifestation date for determining the applicable level of benefits.

## A

The claimants' first argument is a familiar one, and one which we have consistently declined to adopt. Relying on *Purdy & Whitfield v. Department of Labor & Indus.*, 12 Wn.2d 131, 120 P.2d 858 (1942), *McFarland v. Department of Labor & Indus.*, 188 Wash. 357, 62 P.2d 714 (1936), and *Beels v. Department of Labor & Indus.*, 178 Wash. 301, 34 P.2d 917 (1934), the claimants argue a beneficiary's claim is separate and distin ct from the worker's claim.

The claimants contend *Purdy, McFarland,* and *Beels* establish that a beneficiary's claim is based upon the fact of death and accrues from that date. A worker's claim, they

argue, is based upon the fact that an industrial injury has been sustained, or that an occupational disease has been contracted, and accrues at the date of injury or manifestation of disease. Therefore, according to the argument, the worker's claim and the survivor's claim should be treated as independent claims, with the benefits determined as of the date each claim accrues.

However, it is well settled in this state that survivor's benefits are fixed at the rate schedule in effect on the date of the worker's injury, or in the case of occupational disease, date of manifestation. *Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 380 P.2d 730 (1963); *Barlia v. Department of Labor & Indus.*, 23 Wn.2d 126, 160 P.2d 503 (1945); *Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 145 P.2d 265 (1944). In *Ashenbrenner, Barlia,* and *Lynch,* a surviving spouse sought to obtain the Legislature's postinjury increase in survivor's benefits, arguing the spousal claim did not accrue until the death of the worker. In each case we reaffirmed the rule that a survivor's claim is independent from the worker's claim to the extent the worker cannot waive the survivor's rights to benefits. *Barlia,* 23 Wn.2d at 129. However, the survivor's claim is derivative of the worker's injury claim for the purpose of determining the applicable schedule of benefits.

Because the survivor's claim derives from the injury claim, the date of injury controls the schedule of benefits. In the context of occupational disease, the counterpart to date of injury is date of manifestation. *Department of Labor & Indus. v. Landon,* 117 Wn.2d 122, 125-26, 814 P.2d 626 (1991). Thus, the date of manifestation controls the schedule of benefits for the worker's claim for an asbestos-related disease and for the survivor's claim for death benefits.

The Department is correct that for the purpose of determining benefit schedules, a survivor's claim is a derivative of the injured worker's claim. Thus, the relevant date for determining survivor's benefits is the date of the worker's injury, or in case of disease, the date of manifestation.

## B

Alternatively, the claimants argue they are entitled to the increased survivor's benefits under the 1988 amendments to the workers' compensation act because the relevant date of manifestation occurred after the effective date of the amendments. This argument turns on whether disability from a separate asbestos-related disease gives rise to a separate date of manifestation. *Landon* foreshadowed this issue but did not decide it: "We recognize that the date of manifestation itself is open to differing interpretations". *Landon*, 117 Wn.2d at 128.

There are three primary diseases associated with asbestos exposure: asbestosis, lung cancer, and mesothelioma. Gideon Mark, Comment, *Issues in Asbestos Litigation*, 34 Hastings L.J. 871, 875 (1983). The Department and the claimants agree the various asbestos-related conditions are separate diseases. The parties also agree the same exposure to asbestos may lead to several separate and distinct asbestos-caused medical conditions, each with different latency periods. A worker who is exposed to asbestos may contract one of the conditions, and not another. It is possible a worker may contract all the conditions.

The claimants contend that because the final, fatal asbestos-induced disease is a separate and distinct condition, its onset gives rise to a separate and distinct date of manifestation. Accordingly, the claimants assert it was error for the Department to use the date of manifestation of the initial asbestos-induced disease in determining benefits. They argue the relevant manifestation date for determining benefits is that of the final asbestos-induced disease which caused the death. This approach would entitle the claimants to the 100 percent level of compensation effective July 1, 1988, because each worker manifested the final, fatal asbestos-related disease after that date.

The Department treats a later manifesting asbestos-related disease as an aggravation of the original asbestos-related condition even though each is a separate and distinct disease. The Department contends it is well established that

all medical conditions which arise from the original traumatic event are covered under the same claim, regardless of when they arise. *Seattle Sch. Dist. 1 v. Department of Labor & Indus.*, 116 Wn.2d 352, 358-59, 804 P.2d 621 (1991); *Corak v. Department of Labor & Indus.*, 2 Wn. App. 792, 800-01, 469 P.2d 957 (1970). Under the Department's approach, even though a worker's lung cancer is a different disease process than the asbestosis, both diagnoses arise out of the same asbestos exposure and would be handled as part of the same claim.

■■■ The problem with treating a separately occurring asbestos-related disease as an aggravation of the original asbestos-related disease is readily apparent. Each asbestos-related disease involves a unique pathology, requires a different treatment, and is not, in fact, an aggravation or continuation of a different asbestos-related condition. Thus, the asbestos-related conditions necessarily involve different dates of injury or manifestation. *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.*, 219 Cal. App. 3d 1265, 268 Cal. Rptr. 699 (1990).

Another problem with the Department's approach is that it focuses on the date of exposure even though the relevant occurrence for determining benefits is the manifestation of disease, not the date of exposure. *Landon*, 117 Wn.2d at 124. In *Landon*, we noted the shift to the date of manifestation and away from the date of exposure fulfills our statutory mandate of liberal construction to insure the fair compensation of disabled workers, with all doubts resolved in favor of the employee. *Landon*, 117 Wn.2d at 126; *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987). In addition, the purpose of workers' compensation benefits is to reflect future earning capacity rather than wages earned in past employment, and the application of outdated benefit schedules fails to fulfill that purpose. *Todd Shipyards Corp. v. Black*, 717 F.2d 1280, 1289 (9th Cir. 1983). The Department's focus on the date of exposure is more likely to cause an outdated schedule of benefits to be applied. *Landon*, 117 Wn.2d at 127.

The same reasoning applies here. If the worker were confined to the original date of manifestation, benefits would be determined according to schedules already obsolete under current statutes. This is inconsistent with the purpose of replacing future wages, and the express goal of the workers' compensation act to reduce to a minimum the worker's economic loss. RCW 51.12.010. Thus, the policies behind the workers' compensation act, *Landon*'s directive that we focus on the date of manifestation in latent occupational diseases, and the undisputed medical evidence compel the conclusion that the claimants' final asbestos-induced disease should be accorded its own date of manifestation.

The Department argues the claimants' proposed approach represents a symptom-by-symptom date of manifestation rule. However, these cases do not involve a worker who manifests additional symptoms of the original disease. Instead, years after the original asbestos-related condition, each worker suffered the onset of an entirely different disease with its own set of symptoms and treatment.

The Department also asserts that using the later manifestation date violates the statutory provision requiring occupational disease claims and injury claims be handled "in the same manner". RCW 51.16.040. In handling an industrial injury claim, the injured worker's rights are fixed at the time of the original injury regardless of whether there is a subsequent aggravation or worsening of the condition. *Corak*, 2 Wn. App. at 800-01. The Department argues RCW 51.16.040 dictates only one date of manifestation when the worker suffers multiple, unrelated diseases.

We do not agree. RCW 51.16.040 requires the amount of benefits paid to workers suffering an occupational disease be calculated in the same way as benefits paid to those suffering an industrial injury. *Landon*, 117 Wn.2d at 124. Just as multiple dates of injury will give rise to multiple industrial injury claims, so also will the worker who establishes separate and distinct diseases from asbestos exposure be able to claim separate dates of manifestation.

Conclusion

■ We hold the survivor's benefits should be determined as of the date of manifestation of the asbestos-related disease causing the death. The right to attorney fees, as well as the determination of the amount thereof, is governed by the statute in force at the termination of the action, rather than at the time of its commencement. *Petersen v. Port of Seattle*, 94 Wn.2d 479, 487, 618 P.2d 67 (1980); *Mackey v. American Fashion Inst. Corp.*, 60 Wn. App. 426, 430, 804 P.2d 642 (1991); *Bellingham v. Eiford Constr. Co.*, 10 Wn. App. 606, 608, 519 P.2d 1330, *review denied*, 84 Wn.2d 1002 (1974). Under amended RCW 51.52.130, effective July 25, 1993, claimants are entitled to reasonable attorney fees for their appeals to superior court and to appellate courts, where the Board's decision is reversed or modified and additional relief is granted to a worker or beneficiary. *See* Laws of 1993, ch. 122, § 1. Accordingly, the claimants are entitled to their reasonable attorney fees incurred in their appeal to superior court and this court. On remand, the trial court shall determine the proper amount of attorney fees to be awarded. RAP 18.1 (i).

These cases are remanded for proceedings consistent with this opinion.

UTTER, BRACHTENBACH, SMITH, and GUY, JJ., concur.

MADSEN, J. (dissenting) — I dissent. Today this court accomplishes an objective inconsistent with our state's workers' compensation statute and case law: it creates an exception under the statute for survivor's benefits which is applicable only to beneficiaries of deceased asbestos workers. Not only is this holding unfair to survivors of deceased workers of industrial accidents, but it fails to achieve the express purpose of the statute and results in a greater burden to all parties of a workers' compensation claim.

The mechanisms to adequately compensate an injured asbestos worker and his or her beneficiaries are firmly in place under this state's Industrial Insurance Act (the Act). *See generally* RCW Title 51. Moreover, Washington case law has further defined workers' rights under the Act. Specifically, in *Department of Labor & Indus. v. Landon*, 117 Wn.2d 122, 128, 814 P.2d 626 (1991), this court held that for occupational disease claims filed prior to July 1, 1988, benefits will be calculated as of the date the worker's disease manifests itself.

Furthermore, in *Landon*, we established that the law in effect at the time of manifestation will govern benefits for claims related to occupational disease. *Landon*, at 126-27. These rules parallel our well-established "date of injury" rules for workers injured in industrial injury accidents. *Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 27, 380 P.2d 730 (1963); *Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 807, 145 P.2d 265 (1944); *Thorpe v. Department of Labor & Indus.*, 145 Wash. 498, 500, 261 P. 85 (1927).

Today, the majority circumvents this legal precedent by declaring that each occupational disease an injured asbestos worker may contract as a result of exposure to asbestos gives rise to a new date of manifestation. The majority claims to base its decision on "undisputed medical evidence" without so much as citing a single medical source to support its contention. Majority, at 231. To the contrary, however, medical experts, case law and the Act itself, as well as considerations of fairness, require the opposite result.

In order to adequately define the date of manifestation in asbestos cases, it is necessary to have an understanding of the nature of asbestos-related disease. The majority correctly identifies the major diseases a worker may contract as a result of asbestos exposure: asbestosis (pleural and parenchymal), pulmonary (lung) cancer, and mesothelioma.[3] Christopher C. Mansfield, *Asbestos: The Cases and the Insurance Problem*, 15 Forum 860, 862 (1979); *see generally* Irving J. Selikoff & Douglas H.K. Lee, *Asbestos and Disease* 143-336 (1978) (establishing the cause-and-effect relationship of exposure to asbestos and the subsequent development of disease). However, suggesting, as the majority does, that these diseases are somehow separate from the injured worker's original asbestos-related diagnosis, thereby warranting different treatment under the workers' compensation statute, is unfounded.

Indeed the link between asbestos exposure and these diseases is unquestionable. In fact, over a dozen major studies have been conducted since 1955 confirming the link between asbestos and the increase in lung cancer. Gideon Mark,

---

[3]Other asbestos-related conditions exist such as "asbestos warts, benign pleural effusions and cancers of other organs, but these are either less common or of less significance in the legal area." Robert H. Thompson et al., *Current Issues in Washington Workers' Compensation* 39 (1988).

Comment, *Issues in Asbestos Litigation*, 34 Hastings L.J. 871, 873 (1983). Further, it has been found that "[p]ulmonary carcinoma or lung cancer is more prevalent among those occupationally exposed to asbestos than the general population." Mansfield, 15 Forum at 863. Moreover, mesothelioma, a type of cancer affecting primarily the lining of the lungs, was relatively rare until the widespread use of asbestos. James W. Mehaffy, *Asbestos-Related Lung Disease*, 16 Forum 341, 343 (1980).

It is common knowledge that physical manifestation of asbestos-related disease can take years. *See* 1B Arthur Larson, *Workmen's Compensation* § 41.82 (1991). The latency period between the first asbestos exposure and the appearance of lung cancer is generally 15 years or more; however, it is not unusual for a 30- to 35-year lag before the onset of this disease. Barbara A. Wetzel, Comment, *Asbestos in the Work Place: What* Every *Employee Should Know*, 31 Santa Clara L. Rev. 423, 430 (1991). In addition, it can take as long as 40 to 45 years before asbestosis and mesothelioma manifest in a worker exposed to asbestos. Wetzel, at 430.

The significance of a worker diagnosed with asbestos-related condition is that it is a precursor of diseases yet to come. The paramount problem facing the injured asbestos worker is that it is impossible to foresee which subsequent disease the worker will contract.

Asbestos inhalation starts an injurious process. This is best illustrated by asbestosis, which is a progressive disease that is "characterized by pulmonary fibrotic changes which develop slowly over the years. The process begins near the time of initial exposure. The fibers insidiously injure the lungs throughout the period of exposure, and the process continues even after physical symptoms become evident." (Footnotes omitted.) Pamela J. Layton, Comment, *Manifestation: The Least Defensible Insurance Coverage Theory for Asbestos-Related Disease Suits*, 7 U. Puget Sound L. Rev. 167, 175 (1983); *see also* Selikoff & Lee, at 145-47. Accordingly, while the resulting diseases injured asbestos workers may contract involve unique pathologies and

require various treatments, as the majority states, this is beside the point. What is pivotal is that these diseases can be traced to a worker's single or prolonged exposure to asbestos and once diagnosed with asbestos-related condition the injured worker is entitled to trigger the workers' compensation statute by filing a claim for compensation and benefits. *See* RCW 51.28.055; RCW 51.32.180; Mansfield, 15 Forum at 861-62; *see also* Selikoff & Lee, at 173-74; Marvin J. Levine, *Legal Questions Regarding the Causation of Occupational Disease*, 26 Lab. L.J. 88 (1975). As a result, it must be concluded that diagnosis of the original asbestos-related condition is the appropriate date of manifestation for the purpose of compensating an injured asbestos worker, and subsequently the worker's beneficiaries.

This result is supported by Washington case law. In *Crabb v. Department of Labor & Indus.*, 186 Wash. 505, 506, 58 P.2d 1025, 105 A.L.R. 964 (1936), appellant successfully filed a claim for an injury sustained to his right ankle as a result of a fall. Approximately 2 years later, appellant filed a petition for aggravation to reopen his claim for an injury to his neck which resulted from the original injury but was not immediately apparent to him. *Crabb*, at 506-07. This court held that even though the injuries to appellant's ankle and neck were distinct, it was an aggravation of the original injury. *Crabb*, at 512.

In reaching its decision, this court considered the express legislative intent of liberal construction to insure workers are adequately compensated. *Crabb*, at 512. The court concluded that:

> A liberal interpretation impels us to hold that the change in condition, when proven, permits a continuing jurisdiction to end, diminish, or increase compensation previously awarded, even though the change in condition manifests itself in injuries not expressly enumerated in the original award, but yet attributable to the original accident.

*Crabb*, at 509-10 (quoting *Skelly Oil Co. v. Standley*, 148 Okla. 77, 79, 297 P. 235, 237 (1931)). Consequently, to conclude that the various diseases an injured asbestos worker

may contract are anything other than an aggravation fails to fulfill our state's statutory mandate of liberal construction.

Further, this court has held that to establish aggravation, the injured worker need only show a "causal connection" between the injury and subsequent aggravation through evidence provided by a medical expert. *Venezelos v. Department of Labor & Indus.*, 67 Wn.2d 71, 74, 406 P.2d 603 (1965). The record before this court is replete with expert evidence that each worker had a subsequent aggravation of his condition.

Although the majority insists that the decedents' final asbestos conditions were not aggravations of the original asbestos-related conditions, in fact, twice Mr. Lee successfully reopened his claim with the Department on grounds of aggravation of his condition.[4] He filed to reopen his claim on March 30, 1988, and again on October 1, 1990. *In re Lee*, Bd. of Indus. Ins. Appeals Dec. 91 6000, 91 0795, at 3 (1992). Each time the Department granted his request and authorized additional medical treatment. *In re Lee*, at 3. In spite of this, the majority holds that subsequent asbestos diseases are not aggravations of the original condition. This conclusion is contrary to the Act and not supported by case law.[5]

The dictionary defines "aggravation" as "an increasing in seriousness or severity". *Webster's Third New International Dictionary* 41 (1966). Certainly, when a worker's condition goes from asbestosis to small cell carcinoma, as was the case

---

[4]The majority cites to *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.*, 219 Cal. App. 3d 1265, 268 Cal. Rptr. 699 (1990) in support of this contention. However, that case is distinguishable from the case we decide today, for at issue there was whether it was possible for one period of exposure to asbestos to result in more than one injury, therefore, more than one date of injury. *Chevron*, at 1271. Equally important, this court has declared that "our Industrial Insurance Act is unique and the opinions of other state courts are of little assistance in interpreting our Act." *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 482-83, 745 P.2d 1295 (1987).

[5]RCW 51.32.160 provides that "[i]f aggravation . . . of disability takes place, the director may, upon the application of the beneficiary, made within seven years from the date the first closing order becomes final, or at any time upon his or her own motion, readjust the rate of compensation in accordance with the rules in this section . . . ." Moreover, WAC 296-14-400 grants the Director the authority to reopen, upon the worker's application, a claim for aggravation or worsening of condition to provide proper and necessary medical treatment.

for Mr. Lee, an increase in seriousness of the worker's condition has occurred. Or going from asbestos-related lung disease to mesothelioma, as happened to Mr. Kilpatrick, is an aggravation of a worker's condition. Under today's ruling, each of these workers would be expected to file a new claim for each condition he subsequently contracted as a result of the original asbestos injury. This result reduces neither the worker's suffering nor economic loss. RCW 51.12.010. And in some cases, this added burden may result in workers not filing a new claim after the first manifestation, which would effectuate lower death benefits since the "new disease" does not relate back to the date of exposure. Clearly, the majority's decision places a great burden on the injured asbestos worker and his or her family, as well as on the workers' compensation scheme as a whole.

Of further concern is that treating beneficiaries of occupational disease workers and industrial injury accident workers differently, as the majority has done today, is not supported by the Act. First, under the Act all beneficiaries entitled to death benefits, regardless of whether the worker dies as a result of an occupational disease or an industrial injury, "*shall* receive the *same* compensation benefits". (Italics mine.) RCW 51.32.180. This court has stated that "no part of a statute should be deemed inoperative or superfluous unless it is the result of obvious mistake or error". *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 13, 810 P.2d 917, 817 P.2d 1359 (1991). This requires that every word, clause, and sentence of the statute be given meaning. *Clark v. Pacificorp*, 118 Wn.2d 167, 183, 822 P.2d 162 (1991). By providing survivors of deceased asbestos workers greater compensation benefits than survivors of other workers killed in the course of employment, the majority's interpretation renders this provision meaningless.

Next, this court has stated that when interpreting a statute the Act must be read as a whole, giving effect to all language used. *State v. S.P.*, 110 Wn.2d 886, 890, 756 P.2d 1315 (1988). The death benefits provision of the Act provides that "[w]here death results from *the* injury" a surviving

spouse is eligible for benefits under this title. (Italics mine.) RCW 51.32.050(2)(a). This statutory language clearly indicates that the Legislature intended to compensate the injury, or in the case of occupational disease the disability, which gave rise to the worker's rights to compensation. Had the Legislature intended that death benefits be paid for death as a result of "an" injury, it would have provided so. Under the majority's approach, "an" injury is compensable and death benefits will not be based on the injury for which the worker was compensated. This result ignores the Act's directive.

Lastly, when a statute is amended it is presumed to operate prospectively unless the legislative intent expressly provides the application be retrospective. *Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 25, 380 P.2d 730 (1963); *Bodine v. Department of Labor & Indus.*, 29 Wn.2d 879, 888, 190 P.2d 89 (1948); *Barlia v. Department of Labor & Indus.*, 23 Wn.2d 126, 128, 160 P.2d 503 (1945); *Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 807, 145 P.2d 265 (1944). At the time decedents filed their claims, monthly death benefit payments were not to exceed 75 percent of the average monthly wage computed under RCW Title 51. *See* Laws of 1988, ch. 161, § 2. On July 1, 1988, the statute was amended so that death benefits after that date were not to exceed 100 percent. RCW 51.32.050(2)(d). The statute is silent as to whether the amendment was retrospective; therefore, it must be concluded that the July 1, 1988, amendment is prospective. Thus, the claimants' benefits must be determined on schedules in existence prior to the July 1, 1988, amendment.

Finally, today's decision disregards the longstanding principle of workers' compensation law which is the protection of the state workers' compensation fund. *Clark*, at 186. And while the purpose of workers' compensation is to provide injured workers and their families with swift and certain relief, the point is to achieve this objective as economically as possible. *See* RCW 51.04.010; RCW 51.12.010; *Favor v. Department of Labor & Indus.*, 53 Wn.2d 698, 336 P.2d 382

(1959); *see also* Lance Palmer, Note, *Curing Washington's Occupational Disease Statute*, 11 U. Puget Sound L. Rev. 763, 767 (1988). The Act, through various provisions, has established a method for maintaining and replenishing the funds so that all injured workers and their dependents are insured future coverage. *See generally* RCW Title 51. The majority's decision is incompatible with this statutory scheme.

In summary, had the majority based its opinion on this state's case law and the Act, I believe it would have concluded that due to the nature of asbestos-related disease, the rights of claimants to compensation and benefits are fixed as of the date the worker's asbestos-related condition first manifests itself. The Act is intended to provide prompt relief to an injured worker and under the current scheme it does just that. It does not draw a distinction between the various stages of disease an injured asbestos worker may experience, nor does it distinguish between the compensation and benefits afforded workers injured from occupational disease and workers injured from industrial injuries; neither should this court.

ANDERSEN, C.J., and DOLLIVER and DURHAM, JJ., concur with MADSEN, J.