FILED
COURT OF APPEALS
DIVISION II

2015 AUG 18 AM 9: 02

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOSEPH H. WOODS, <br><br>       Appellant, <br><br> v. <br><br> DEPARTMENT OF LABOR AND INDUSTRIES <br><br>       Respondent. | No. 45316-9-II <br><br><br><br> UNPUBLISHED OPINION |

LEE, J. — Joseph H. Woods appeals the superior court's order affirming the Board of Industrial Insurance Appeals' (Board) order that upheld the Industrial Insurance Appeal judge's (IIAJ) order affirming three of the Department of Labor and Industries' (Department) orders regarding his occupational disease claim. On appeal, the parties stipulated and agreed that if the first order did not establish the time-loss rate, then the Department would reconsider the other two appealed orders. The first order did not establish the time-loss rate; therefore, the superior court erred by affirming the Board's order. Accordingly, we reverse the superior court and the Board and remand to the Department for further proceedings consistent with the parties' stipulation.

## FACTS

The underlying facts in this matter are not in dispute. Woods worked in construction from 1977 until he retired in 2003. From 2003 until 2006, Woods worked "intermittently" for a "tree servicing contractor." Clerk's Papers (CP) at 41. On April 13, 2006, Woods first sought medical treatment for shoulder pain, and he was diagnosed with bilateral rotator cuff syndrome. Woods

filed an application for benefits with the Department, claiming that his injury was an occupational disease resulting from "35 years of hammering, sawing, [and] heavy lifting." Certified Board Record (CBR) Ex.1.

A.    DEPARTMENT ORDERS

On January 3, 2007, the Department issued an order notifying Woods that it accepted his claim. On January 19, the Department issued an order designating the date of manifestation of his occupational disease. It determined that for compensation purposes, the date of manifestation was April 13, 2006, because that was the date that he first sought medical treatment. The January 19 order stated that the order would become final in 60 days unless appealed.[1] Woods did not appeal the January 19 order.

On December 4, 2007, the Department issued an order awarding time-loss compensation based on the unchallenged date of manifestation in the amount of $3,551.05, for the period of May 23, 2007 through September 30, 2007.

---

[1] The final order language is as follows:

> THIS ORDER BECOMES FINAL 60 DAYS FROM THE DATE IT IS COMMUNICATED TO YOU UNLESS YOU DO ONE OF THE FOLLOWING: FILE A WRITTEN REQUEST FOR RECONSIDERATION WITH THE DEPARTMENT OR FILE A WRITTEN APPEAL WITH THE BOARD OF INDUSTRIAL INSURANCE APPEALS. IF YOU FILE FOR RECONSIDERATION, YOU SHOULD INCLUE THE REASONS YOU BELIEVE THIS DECISION IS WRONG AND SEND IT TO: [DEPARTMENT ADDRESS]. WE WILL REVIEW YOUR REQUEST AND ISSUE A NEW ORDER. IF YOU FILE AN APPEAL, SEND IT TO: [BOARD OF INDUSTRIAL INSURANCE APPEALS ADDRESS] OR SUBMIT IT ON AN ELECTRONIC FORM FOUND AT [WEBSITE].

CBR Exs. 8, 9.

On June 25, 2009, the Department issued an order designating the January 19, 2007 order, which set April 13, 2006 as the date of manifestation, as final and binding.[2] The order notified Woods that it could not reconsider the January 19, 2007 order designating the date of manifestation because Woods did not appeal the order within 60 days.

On June 26, the Department issued an order setting out the Department's wage calculations. he order notified Woods that the Department had determined that his wages were $68.75 per month, and that it calculated those wages "based on the reported income for the twelve-month period from [April 1, 2005] to [March 31, 2006]." CBR Ex. 15. Woods appealed June 26 order.

On October 5, the Department issued another order affirming the June 26, 2009 order.

On October 6, the Department issued an order that corrected and superseded its December 4, 2007 order. The order notified Woods that the Department overpaid Woods' time-loss compensation, and that Woods must reimburse the difference to the Department. On April 22, 2010, the Department issued an order affirming the October 6, 2009 order.

B. WOODS' APPEAL TO THE INDUSTRIAL INSURANCE APPEALS JUDGE

Woods appealed three Department orders to an IIAJ: (1) the **June 25, 2009 order** (which refused to reconsider the January 19 order); (2) the **October 5, 2009 order** (which affirmed the June 26 wage order); and (3) the **April 22, 2010 order** (which affirmed the October 6 overpayment order). The IIAJ consolidated the three appeals.

---

[2] There is no record that Woods appealed the January 19, 2007 order, or other explanation of why the Department issued the June 25, 2009 order denying reconsideration.

On appeal before the IIAJ, the parties stipulated to the facts. The parties also agreed that "if the Department Order of January 19, 2007 is not a binding determination as to the time[-]loss rate under this claim, that then and in that instance this matter would be remanded to the Department to use the earlier date and prior earnings to establish the time[-]loss rate and onset date." CBR at 86.

The IIAJ affirmed the June 25, 2009 order, finding that the Department correctly determined that the January 19, 2007 order is final because Woods did not appeal it within 60 days. Because the January 19, 2007 order was final, the IIAJ found that the doctrine of collateral estoppel prevented Woods from challenging April 13, 2006 as the date of manifestation of his occupational disease. On May 31, 2011, the IIAJ affirmed the Department's orders dated June 25, 2009, October 5, 2009, and April 22, 2010.

## C.    Woods' Appeal to the Board of Industrial Insurance Appeals

Woods appealed the IIAJ's order to the Board of Industrial Insurance Appeals. The parties entered the same stipulated facts and agreement as entered into before the IIAJ. In Woods' petition for review, he argued that the January 19, 2007 order was not binding on him for purposes of calculating time-loss compensation, and that the time-loss rate should be based on the wages that Woods earned in 2003. And, Woods argued that because the January 19, 2007 order was not determinative of his time-loss rate, the Department should reconsider the wage calculation pursuant to the parties' stipulation. On July 19, 2011, the Board affirmed the IIAJ's order, finding that the orders dated June 25, 2009, October 5, 2009, and April 22, 2010 were correct.

D.    WOODS' APPEAL TO THE SUPERIOR COURT

Woods appealed the Board's order to the superior court. The parties agreed that if the superior court found that the January 19, 2007 order was not binding as to the time-loss rate, then the Department would reconsider the remaining issues.

The superior court found that "Mr. Woods is barred by collateral estoppel from arguing his date of manifestation, for compensation purposes, is not April 13, 2006." CP at 44. The superior court affirmed the Board's order affirming the IIAJ's order. The superior court's findings of fact and conclusions of law incorporated the Board's findings of fact and conclusions of law. Woods appeals.

## ANALYSIS

Woods appeals the superior court's order affirming the Board's order. Woods argues that the Board and the superior court failed to honor the parties' stipulation because the parties' stipulation was triggered and his claim should have been remanded to the Department. We agree.

A.    STANDARD OF REVIEW

Under the Industrial Insurance Act ("IIA"), the Board's orders are prima facie correct, and the party challenging the order has the burden of proof. RCW 51.52.115; *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355, *review denied*, 167 Wn.2d 1015 (2009). The superior court reviews the issues de novo and relies exclusively on the certified board record. RCW 51.52.115; *Rogers*, 151 Wn. App. at 179.

On appeal of the superior court's order, we review the superior court's order, not the Board's order, using the ordinary standard of review for civil cases. RCW 51.52.140. In reviewing the superior court's order, we determine "whether substantial evidence supports the trial court's

factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings." *Rogers*, 151 Wn. App. at 180. A factual finding is supported by substantial evidence "when the evidence in the record is sufficient to persuade a rational, fair-minded person that the finding is true." *Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006). "Credibility determinations are solely for the trier of fact and cannot be reviewed on appeal." *Watson*, 133 Wn. App. at 909.

B.      DATE OF MANIFESTATION AND TIME-LOSS RATE

Under the IIA, "time-loss and loss of earning power compensation rates are determined by reference to a worker's wage at the time of injury." *Gallo v. Dep't of Labor & Indus.*, 155 Wn.2d 470, 481, 120 P.3d 564 (2005). "In the context of occupational disease, the counterpart to date of injury is date of manifestation." *Kilpatrick v. Dep't of Labor & Indus.*, 125 Wn.2d 222, 228, 883 P.2d 1370 (1994); RCW 51.32.180(b); WAC 296-14-350. The "date of manifestation" is "the date the disease required medical treatment or became totally or partially disabling, whichever occurred first, without regard to the date of the contraction of the disease or the date of filing the claim." WAC 296-14-350(3).

The rate of compensation for an occupational disease claim "shall be established as of the date the disease requires medical treatment or becomes totally or partially disabling, whichever comes first, and without regard to the date of the contraction of the disease or the date of filing the claim." RCW 51.32.180(b). "[T]he purpose of workers' compensation benefits is to reflect future earning capacity rather than wages earned in past employment." *Kilpatrick*, 125 Wn.2d at 230. Thus, for an occupational disease claim, the time loss or loss of earning power compensation rate

is determined by the date the disease required medical treatment or became totally or partially disabling, whichever occurred first.

Here, the parties' agreed that that "if the Department Order of January 19, 2007 is not a binding determination as to the time[-]loss rate under this claim, that then and in that instance this matter would be remanded to the Department to use the earlier date and prior earnings to establish the time[-]loss rate and onset date." CBR at 13. Based on the language of the parties' agreement, determining whether the January 19, 2007 order was a binding determination as to the time-loss rate requires two steps: First, whether the January 19, 2007 order setting the date of manifestation was a binding determination; and second, whether the date of manifestation set the time-loss rate.

With regard to the first inquiry, the January 19, 2007 order, setting the date of manifestation as April 13, 2006, is a final and binding order. The January 19, 2007 order explicitly informed Woods that he had 60 days to challenge the order or it would become final. Failure to appeal a Department order within 60 days renders the order a final adjudication. *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 538, 886 P.2d 189 (1994); *Cena v. Dep't of Labor & Indus.*, 121 Wn. App. 915, 924, 91 P.3d 903 (2004), *review denied* 153 Wn.2d 1015 (2005); *see* RCW 51.52.060. The record contains no evidence that Woods challenged the January 19, 2007 order within 60 days. *See* CBR at 5, 29; Verbatim Report of Proceedings (VRP) at 5. Because Woods did not appeal the January 19, 2007 order within 60 days, the January 19, 2007 order is a final order.

With regard to the second inquiry, the date of manifestation is not binding as to the time-loss rate. Because Woods reported working intermittently at the time his occupational disease manifested, RCW 51.08.178(2) determines Woods' time-loss compensation. Although the time-loss rate is based on the date of manifestation, *see* RCW 51.32.180(b); WAC 296-14-350; *see also*

*Kilpatrick*, 125 Wn.2d at 228, under RCW 51.08.178(2), the date of manifestation does not necessarily determine the time-loss rate.

RCW 51.08.178(2) provides:

> In cases where (a) the worker's employment is exclusively seasonal in nature or (b) the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent, the monthly wage shall be determined by dividing by twelve the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern.

Therefore, under RCW 51.08.178(2), the Department has discretion to determine a 12-month period that fairly represented Woods' employment pattern and not just the 12-month period preceding the date of manifestation. Accordingly, because of the Department's ability to select a 12 month period preceding the date of manifestation, the date of manifestation does not uniformly set the time-loss rate in this instance. Thus, based on the parties' stipulation, Woods' claim should have been remanded to the Department.

Woods also argues that the Department miscalculated his time-loss rate by basing his wages on his date of manifestation and not on the date of exposure to the conditions that caused his occupational disease. Woods asks us to interpret RCW 51.08.178(2) as allowing a claimant to "reach back" into any time during his or her employment history to calculate the monthly wage. We decline to do so.

The relevant focus in an occupational disease claim for "determining benefits is the manifestation of disease, not the date of exposure." *Kilpatrick*, 125 Wn.2d at 230. RCW 51.32.180(b)[3] provides:

---

[3] "Occupational diseases—Limitation"

[T]he rate of compensation for occupational diseases *shall be established as of the date the disease requires medical treatment* or becomes totally or partially disabling, whichever occurs first, and without regard to the date of the contraction of the disease or the date of filing the claim.

(Emphasis added.) Furthermore, WAC 296-14-350[4] provides:

(2) The compensation schedules and wage base for claims shall be based on the schedule in effect on the date of disease manifestation. Compensation *shall* be based on the monthly wage of the worker as follows:

(a) If the worker was employed at the time the disease required medical treatment or became totally or partially disabling, whichever occurred first, *compensation shall be based on the monthly wage paid on that date regardless of whether the worker is employed in the industry that gave rise to the disease or in an unrelated industry.*

(Emphasis added.) Because Woods' argument is contrary to the purpose of worker's compensation benefits, we decline to adopt his interpretation.

The parties' stipulation provided that if the January 19, 2007 order was not binding as to the time-loss rate, then Woods' claim would be remanded to determine the time-loss rate. Because the date of manifestation does not necessarily dictate the time-loss rate under RCW 51.08.178(2), the superior court erred by affirming the Board's decision. Therefore, Woods' claim must be remanded to the Department for calculation of the time-loss rate.

C.     ATTORNEY FEES

Woods requests attorney fees on appeal if the superior court is reversed and additional relief is granted. Although we reverse the superior court, we do not grant additional relief. Accordingly, we deny Woods requests for attorney fees.

---

[4] "Claim allowance and wage determination in occupational disease cases"

No. 45316-9-II

We reverse the superior court's order and the Board's order affirming the IIAJ's order, and remand to the Department for proceedings consistent with the parties' stipulation.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Melnick, J.

10